**UNITED STATES of America ex rel. Andrew MAXWELL, Petitioner,**

v.

**Jerry GILMORE, Warden, Pontiac Correctional Center, Respondent.**

**No. 96 C 6445.**

United States District Court, N.D. Illinois, Eastern Division.

March 9, 1999.

Gary Ravitz, Eric Palles, Chicago, IL, for petitioner.

Arleen C. Anderson, Carol L. Gaines, Asst. State's Attys., Chicago, IL, for respondent.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Andrew Maxwell ("Maxwell") has filed a 28 U.S.C. § 2254 ("Section 2254") petition for a writ of habeas corpus ("Petition"). Maxwell challenges both his murder conviction and the consequent death sentence and seeks an evidentiary hearing to consider that challenge. For the reasons stated hereafter, this Court denies the Petition in principal part but grants certain aspects of Maxwell's requests for an evidentiary hearing and for the opportunity to conduct discovery.

### Facts

Under Section 2254(e)(1)[1] the state court's findings of fact are presumptively correct in any federal habeas proceeding. Accordingly this opinion sets forth the Illinois Supreme Court's recitation of the facts from its direct review of Maxwell's

---

**1.** Because Maxwell filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("Act") (Pub.L. No. 104–132, 110 Stat. 1214), the amendments embodied in the Act apply to this Petition (*Lindh v. Murphy*, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)).

case (*People v. Maxwell* ("*Maxwell I*"), 148 Ill.2d 116, 121–25, 170 Ill.Dec. 280, 592 N.E.2d 960, 962–65 (1992)):

The offenses involved here occurred in Chicago on October 26, 1986. Harold Anderson testified at trial that sometime after 9 o'clock that evening he and Adrian Bracy were walking in the 8300 block of South Indiana Street when they were approached by three men, whom Anderson identified as the defendant, Jerry Thompson, and Gregory Howard. According to Anderson, the defendant pointed a gun at Bracy and announced a stickup. In response, Bracy threw a beer bottle he was carrying at the defendant. As Anderson retreated, he saw the defendant shoot Bracy. Anderson ran behind a house, and he later heard a second shot fired. Anderson returned to the scene of the shooting several moments later and found Bracy lying on the ground. A nearby resident testified that he heard two gunshots around 9:30 p.m. The witness looked out his window and saw two figures, followed by a third, running across his yard. He did not see the individuals' faces. Police who were summoned to the neighborhood found Bracy's wallet several feet from his body; the wallet contained identification but no money. An autopsy later established that Bracy died as a result of multiple gunshot wounds.

Over a defense objection, the State presented evidence of a series of three offenses committed by the defendant, Jerry Thompson, and Gregory Howard in Chicago during the evening of November 3, 1986. Terrance L. Wilson, who lived in the 10400 block of South Troy in Chicago, returned to his home around 8:50 that evening. Wilson testified that three men entered the garage as he parked his car. One of the men drew a gun and demanded Wilson's car keys. Another man searched Wilson's pockets and removed $90. The three men, whom Wilson identified as the defendant, Jerry Thompson, and Gregory Howard, then got in the car and drove off.

Jose Flores, who lived in the 10600 block of Avenue B, left work at 10:45 p.m. on November 3, 1986. Flores testified that he was cut off by a black Monte Carlo containing three men while he was driving home. When Flores parked his car, he noticed the same Monte Carlo nearby. As Flores got out of his car, he was approached by three men, whom he identified as the defendant, Jerry Thompson, and Gregory Howard. The defendant pointed a gun at Flores and threatened to shoot him. Flores ran inside his house.

Dmitar Marich, who lived in the 10900 block of Avenue A in Chicago, returned home from work around 11 p.m. on November 3, 1986. Marich testified that he parked his car in the garage and got out of the vehicle. A man, whom Marich identified as the defendant, then put a gun to Marich's head and took $20 from his shirt pocket. Two other men, whom Marich was not able to identify, were standing nearby. The three then ran off.

Patrolling officers spotted Wilson's black Monte Carlo around 11:30 the evening of November 3. After a chase, the car crashed into a garage and three men jumped out. The officers captured one of the car's occupants, Jerry Thompson, but the other two escaped. Another officer on patrol saw the defendant several hours later. The officer pursued the defendant on foot and eventually apprehended him; the defendant's .22–caliber revolver was subsequently found in a backyard along that same course. Bullet fragments removed from Bracy during the autopsy were shown to be consistent with test firings from the handgun abandoned by the defendant during the chase. Other evidence established that the defendant had stolen the gun during a burglary committed in September 1985, more than a year before the offenses charged here. Fingerprints positively identified as the defendant's and Jerry Thompson's had been found at the scene of the 1985 burglary.

Following his arrest for the string of offenses committed November 3, the defendant became a suspect in the murder and attempted armed robbery of Adrian Bracy. In a lineup conducted November 12, Harold Anderson identified the defendant and the two other offenders. That same day, the defendant gave law enforcement officers oral and signed statements admitting his involvement in the present offenses, and these confessions were introduced into evidence at trial. In his initial statement, the defendant admitted his participation in the crimes but denied that he was the one who had fired the gun. Later, when told, correctly, that he had been identified as the gunman, the defendant admitted to police officers that he had shot Bracy.

In his statements, the defendant said that he, Jerry Thompson, and Gregory Howard were driving around during the evening of October 26 looking for someone to rob; the defendant said that he was armed with a .22–caliber revolver. When they saw two people walking in the vicinity of 83rd and Wabash, they parked their car nearby and approached the intended victims on foot. The defendant announced the stickup to the victims. Bracy started swinging a bottle, and the second man backed away and ran off. Bracy threw the bottle at the defendant, missing him. According to the defendant, Bracy then reached into his pocket, as if to retrieve something. The defendant fired a total of three shots at Bracy. After the third shot was fired, Bracy stumbled and fell to the ground. Thompson and Howard searched Bracy's pockets, but they did not find any money. The defendant, Thompson, and Howard then fled from the scene.

The defendant did not testify at trial. The only witness called by the defense was Sady Holmes, who provided evidence of an alibi. Holmes, who was the mother of the defendant's girlfriend, testified that during the evening of October 26, 1986, the defendant was at her home watching television with her daughter between 9 and 10 o'clock, the time of the offenses charged here.

Following the close of evidence, the jury found the defendant guilty of murder and attempted armed robbery. The matter then proceeded to a capital sentencing hearing. At the first stage of the bifurcated proceeding, the parties stipulated that the defendant was 19 years old in October 1986 and therefore had attained a death-eligible age at the time of his commission of the present offenses (see Ill.Rev.Stat.1985, ch. 38, par. 9–1(b)). At the conclusion of the first stage of the hearing, the trial judge found the defendant eligible for the death penalty on the single ground urged by the State, commission of murder in the course of a specified felony, attempted armed robbery (Ill.Rev.Stat. 1985, ch. 38, par. 9–1(b)(6)).

During the second stage of the sentencing hearing, the State presented further evidence of the defendant's criminal history, in addition to the information that had already been introduced at trial. Mote Whiting, 69 years old, testified that he was accosted by the defendant and Jerry Thompson on January 1, 1984. The defendant struck Whiting on the head, knocking him to the ground. The defendant and Thompson then took Whiting's wallet and fled. The defendant was convicted of robbery for that offense.

Stanley Brookins testified that early in the morning on November 1, 1986, he walked past the defendant and another man at the entrance to an alley. The defendant displayed a handgun and threatened to shoot Brookins; Brookins dared the defendant to fire the gun. Brookins then heard several shots but walked on. Sometime later, Brookins noticed that he was bleeding and discovered then that he had been struck by the defendant's shots. Brookins was required to undergo two separate periods of hospitalization for treatment of the

injuries he sustained as a result of the shooting.

At the sentencing hearing, the defendant presented mitigating testimony from eight witnesses. The defendant's mother, Shirley Maxwell, testified that the defendant attended school regularly, though he did not graduate from high school. Mrs. Maxwell also stated that the defendant had been shot on two occasions because he refused to join a street gang. The defendant's two sisters, Martha Brown and Monalisa Maxwell, described their brother as helpful and courteous. Martha stated that the defendant would often escort her to and from the housing project in which she lived. Monalisa stated that the defendant would baby-sit with her child and would repair broken things around the house.

The defendant's girlfriend, Mary Holmes, testified that the defendant helped support their eight-month-old daughter. Mary also stated that the defendant would help people with their groceries and perform other errands. The defendant's cousin, Michael Jones, who had lived with the Maxwell family in 1985, testified that the defendant helped him with his homework and taught him about cars during that period. Favorable testimony in mitigation was also provided by Ramona McIntosh, Judy Frazier, and Beatrice Griffin, who were neighbors and friends of the defendant's family. These three witnesses stated that the defendant would often assist them with errands.

At the conclusion of the hearing, the trial judge sentenced the defendant to death for the murder of Adrian Bracy. The judge also sentenced the defendant to a 15-year prison term on his conviction for attempted armed robbery.

In terms of the material covered, that factual account fairly reflects the record. Additional facts not addressed by the Illinois Supreme Court on direct review will be discussed later in this opinion as they become relevant.

## Procedural History

After his trial and sentencing, Maxwell first appealed directly to the Illinois Supreme Court, which affirmed both his conviction and death sentence in *Maxwell I.* Maxwell's ensuing petition to the United States Supreme Court for a writ of certiorari was denied (*Maxwell v. Illinois,* 506 U.S. 977, 113 S.Ct. 471, 121 L.Ed.2d 377 (1992)). Next Maxwell sought relief under the Illinois Post–Conviction Hearing Act (725 ILCS 5/122–1 through 5/122–7), bringing his post-conviction claims before the original trial court. That court granted the State's motion to dismiss Maxwell's claims without an evidentiary hearing. In June 1996 the Illinois Supreme Court, with Justice Mary Ann McMorrow dissenting, affirmed that dismissal (*People v. Maxwell* ("*Maxwell II*"), 173 Ill.2d 102, 219 Ill.Dec. 1, 670 N.E.2d 679 (1996)), and it denied Maxwell's motion for rehearing three months later. Finally, the United States Supreme Court denied Maxwell's petition for a writ of certiorari (*Maxwell v. Illinois,* 520 U.S. 1174, 117 S.Ct. 1445, 137 L.Ed.2d 551 (1997)).

On April 22, 1997 Maxwell filed his Petition seeking federal habeas relief from this Court under Section 2254.[2] Although Maxwell lists a total of 21 grounds for relief, this opinion groups them into 11 categories of constitutional claims:

1. ineffective assistance of counsel in failing to conduct an adequate investigation at trial;

2. ineffective assistance of counsel in failing to conduct an adequate investigation at sentencing;

3. absence of a knowing and intelligent waiver of Maxwell's right to a jury for capital sentencing, and ineffective as-

---

**2.** That was done to come in under the wire of the one-year timetable (Section 2254(d)(1)) after the Act's effective date. It took a great deal longer for the litigants to assemble the required documents and to present their respective arguments needed to air the complex issues in the case thoroughly.

sistance of counsel in discussing such a waiver with Maxwell;

4. *Brady* violation from prosecutors' failure to turn over evidence of systematic physical abuse of prisoners at Area 2 Violent Crimes;

5. due process violation in failing to provide a state evidentiary hearing on Maxwell's post-conviction petition;

6. ineffective assistance of appellate counsel in failing to raise certain claims on direct appeal;

7. Fifth Amendment[3] violation under *Edwards v. Arizona* in conducting a custodial interrogation after Maxwell invoked his right to counsel;

8. denial of the right to a fair trial due to introduction of "other crimes" evidence;

9. due process violation in the trial judge's instructing the jury on felony murder;

10. denial of the right to a fair death penalty proceeding because the sentencing judge failed to give any consideration to mitigating evidence; and

11. unconstitutionality of the Illinois death penalty scheme.

To pursue his claims, Maxwell also requests an evidentiary hearing and the right to pursue discovery.

### Procedural Framework

Before any federal court can address the merits of a Section 2254 petition, petitioner must have both exhausted his state remedies and avoided any fatal procedural defaults (Section 2254(b)(1); *Bocian v. Godinez,* 101 F.3d 465, 468 (7th Cir.1996)). Claims are exhausted "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing review of one's conviction in state court" (*Wallace v. Duckworth,* 778 F.2d 1215, 1219 (7th Cir.1985) (per

curiam)). Because it is clear from the procedural history that Maxwell satisfies the second of those alternatives, this opinion turns to the separate doctrine of procedural default.

While "[e]xhaustion ... refers only to issues that have not been presented to the state court but still may be presented" (*Resnover v. Pearson,* 965 F.2d 1453, 1458 (7th Cir.1992)), procedural default occurs in one of two situations: either petitioner failed to present the federal constitutional issue fairly to the state courts (see, e.g., *Bocian,* 101 F.3d at 469) or the state court rejected a claim on an independent and adequate state law ground (see, e.g., *Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)). Once barred on procedural default grounds, a claim will not be cognizable in a federal habeas proceeding unless the petitioner can clear one of two hurdles established by *Coleman, id.* at 750, 111 S.Ct. 2546:

> [T]he prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Thus this Court must first determine which if any of Maxwell's claims are procedurally defaulted and whether Maxwell may avoid the procedural bar to any such claims by demonstrating either cause and prejudice or a fundamental miscarriage of justice.

Any claims that manage to survive those threshold and intricate procedural obstacles must then satisfy Section 2254's stringent standard for granting habeas claims that the state courts have considered and rejected on their merits. As amended in 1996, Section 2254(d) reads:

---

**3.** As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the underlying Bill of Rights provisions (which of course impose limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

That new language in Section 2254(d) provides only limited review of state decisions alleged to be unreasonable applications of law, for its "statutory 'unreasonableness' standard allows the state court's decision to stand if it is one of several equally plausible outcomes" (*Hall v. Washington,* 106 F.3d 742, 748–49 (7th Cir.1997)).

Section 2254(e) places further limitations on a federal habeas court's ability to examine the facts at issue:

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered

through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Section 2254(e) not only supplements Section 2254(d)(2) by requiring further deference to state court fact findings, but it also curtails federal courts' discretion to determine whether to hold evidentiary hearings. *Burris v. Parke,* 116 F.3d 256 (7th Cir. 1997) has held, however, that the evidentiary hearing limits of Section 2254(e)(2) are not all-embracing. As the statute says, they apply only when "the applicant *has failed to develop the factual basis of a claim* in State court proceedings" (Section 2254(e)(2) (emphasis added)). *Burris,* 116 F.3d at 258–59 explains:

To be attributable to a "failure" under federal law the deficiency in the record must reflect something the petitioner did or omitted. Like the third circuit, see *Love v. Morton,* 112 F.3d 131 (3d Cir.1997), we think that the word "fail" cannot bear a strict-liability reading, under which a federal court would disregard the reason for the shortcomings of the record. If it did, then a state could insulate its decisions from collateral attack in federal court by refusing to grant evidentiary hearings in its own courts.

Accordingly this opinion's consideration of whether to grant Maxwell's request for an evidentiary hearing will examine whether the failure to develop the facts in state court is attributable to Maxwell in the causal sense.

All those things, then, provide the procedural matrix for consideration of Maxwell's substantive claims. This opinion turns to that task.

*Ineffective Assistance of Counsel at Trial*

Maxwell's first claim is that he was denied effective assistance of counsel at trial

because of his attorneys' inadequate investigation of his case. His Petition cites seven instances of such asserted inadequacy.

In response the State argues that Maxwell did not present most of those ineffectiveness claims to the state court and is therefore barred by the procedural default doctrine from raising them here. Unfortunately no attempted mechanical comparison of Maxwell's federal claims and the ineffectiveness claims that he presented in state court suffices to answer the procedural default problem, for the extent of their overlap is unclear. *Steward v. Gilmore*, 80 F.3d 1205, 1212 (7th Cir.1996), quoting *Varnell v. Young*, 839 F.2d 1245, 1248 (7th Cir.1988), explains what a petitioner must raise in the state court to avoid default and preserve his claim for habeas review:[4]

> A claim has been fairly presented to a state court if a petitioner "has clearly informed the state court of the factual basis of that claim and has argued to the state court that those facts constituted a violation of the petitioner's constitutional rights."

Although the application of that standard has "bedeviled courts," the proper inquiry will "avoid hypertechnicality and [ ] enforce the Supreme Court's mandate in light of its purpose—to alert fairly the state court to the federal nature of the claim and to permit that court to adjudicate squarely that federal issue" (*Verdin*, 972 F.2d at 1474 (quotation and citation omitted)).

As is frequently the case because trial counsel's asserted inadequacies are often undisclosed by the trial record, Maxwell raised no ineffectiveness claims on direct appeal. In his state post-conviction petition and in his appeal from the denial of that petition to the Illinois Supreme Court, he presented three grounds for his claim of ineffective trial counsel: the failure to utilize available evidence supporting Max-

well's claim that he was coerced into confessing; the failure to offer any coherent theory of innocence to the jury; and the cumulative effect of counsel's errors and omissions throughout the pretrial, trial, sentencing and post-trial phases.

■ Because an ineffective assistance of counsel claim "must identify the specific acts or omissions of counsel that form the basis for [petitioner's] claim of ineffective assistance" (*Dugan v. United States*, 18 F.3d 460, 464 (7th Cir.1994), quoting *United States v. Delgado*, 936 F.2d 303, 310 (7th Cir.1991)), any ineffectiveness claims predicated on anything other than those three grounds are procedurally defaulted on habeas review (thus *Momient–El v. DeTella*, 118 F.3d 535, 540–41 (7th Cir.1997) held a petitioner's ineffectiveness claims based on grounds not specifically argued before the state court were defaulted, even though he had raised ineffectiveness claims on other grounds in state court). This Court's task is to assess whether the claims that Maxwell raises in his federal Petition were adequately presented to the state court under the rubric of one of the three grounds listed above. If not, they are procedurally defaulted.

■ In those terms six of Maxwell's seven grounds are doomed by procedural default: (1) failure to investigate the issues surrounding the introduction of "other crimes" evidence at trial, which allegedly adversely affected Maxwell's right to testify; (2) failure to investigate the elements of the criminal offense of attempt murder; (3) failure to investigate or present evidence of Maxwell's police-induced injuries at trial; (4) failure to investigate and present evidence of self-defense or voluntary manslaughter; (5) failure to investigate the circumstance of the eyewitness identification of Maxwell; and (6) failure to investigate other listed facts and circumstances of his case. Although Maxwell did argue in state court that the cumulative

4. Although fair presentment is usually considered a part of the exhaustion inquiry, it is also "a useful approach for analyzing procedural default" (*Verdin v. O'Leary*, 972 F.2d 1467, 1473 (7th Cir.1992) (citation omitted)).

effect of poor lawyering at every stage of the process violated his right to effective attorneys, such a catchall assertion cannot be enough for an end run around the procedural default doctrine. Ineffectiveness claims must be made with particularity—here the state court did not have a fair opportunity to address the six listed claims when it was presented only with the bare assertion that Maxwell's attorneys failed to provide competent counsel at any stage of the process.[5]

■ That then requires inquiry into whether Maxwell has provided a viable excuse for his procedural default on those six issues: either cause and prejudice or a miscarriage of justice. He has offered none for his first claim, which charges ineffectiveness based on the failure to investigate "other crimes" evidence.[6] As for the other five, Maxwell argues in his current Petition that appellate counsel was ineffective for not having raised them on direct appeal—an assertion that if proved would constitute cause for not having raised the issues in state court (*Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). But the problem there is that Maxwell never presented the *state* courts with ineffective assistance of appellate counsel claims on any of those grounds. So he cannot rely on such claims

in federal court to establish cause for a procedural default (*id.* at 488–89, 106 S.Ct. 2639), and his claims are denied.

■ With six of Maxwell's seven ineffectiveness-at-trial claims dispatched, that leaves only the final ground, which unlike the others is not so immediately doomed by procedural default. In that respect Maxwell asserts that his attorneys were unconstitutionally ineffective because they· failed to investigate and prepare his alibi defense adequately. That claim is not defaulted, because it relies on the same constitutional provision and facts that Maxwell used to support his state post-conviction claim that he was denied effective assistance of trial counsel in failing to provide a coherent theory of innocence.[7]

■ What level of review applies to that claim? On post-conviction review the state court never addressed the claim directly, instead summarily rejecting the remainder of Maxwell's claims not specifically dealt with (*Maxwell II*, 173 Ill.2d at 123, 219 Ill.Dec. 1, 670 N.E.2d at 688). Maxwell therefore urges that Section 2254(d) is inapplicable to the claim because there is no state court analysis to examine for "unreasonableness." Several cases have held that if a state court summarily disposes of a claim without setting forth the legal or

5. Maxwell argues that the fifth of those claims—the failure to investigate the eyewitness identification—goes directly to the trial attorneys' lack of a coherent theory of innocence, an issue that was raised in state court. But neither Maxwell's post-conviction petition nor his appeal from the denial of that petition to the Illinois Supreme Court mentions the identification issue in discussing the incoherence claim. Because Maxwell did not present that factual basis for an ineffectiveness claim to the state court, it did not have any real opportunity to rule on the issue.

6. Maxwell argues that claim is not procedurally defaulted because he challenged the introduction of "other crimes" evidence at trial on due process grounds, which is related to the Sixth Amendment claim regarding failure to investigate such "other crimes" evidence. That relationship between the two claims cannot save the ineffectiveness claim from procedural default, because the state court was not

fairly presented with any Sixth Amendment approach to the issue.

7. It might be argued that Maxwell faces default on that remaining trial ineffectiveness claim because the state court refused to consider it based on an independent and adequate state ground: that he could have but did not raise the claim on direct appeal and therefore waived it for post-conviction attack. *Maxwell II*, 173 Ill.2d at 123, 219 Ill.Dec. 1, 670 N.E.2d at 688 is ambiguous about whether the court denied the post-conviction claim on waiver grounds or on the merits (including principles of claim preclusion). But because the State does not raise such a waiver argument in this Court, and because an ambiguous state court opinion is not presumed to have relied on state procedural grounds (*Harris v. Reed*, 489 U.S. 255, 265, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)), this opinion reaches the merits of the claim.

factual basis for its denial, the federal habeas court should undertake independent de novo review to determine whether the record reveals a constitutional violation (*Delgado v. Lewis*, 168 F.3d 1148, 1151 (9th Cir.1999) and *Cardwell v. Greene*, 152 F.3d 331, 339 (4th Cir.1998); cf. *Porter v. Gramley*, 112 F.3d 1308, 1313 (7th Cir. 1997), quoting *Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir.1996) (en banc) for the proposition that the Act mandates respect for state court judgments if they contain a "responsible, thoughtful answer reached after a full opportunity to litigate"). This Court too will conduct a de novo review on the merits.

■ Under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) a petitioner must show two things to establish unconstitutional ineffectiveness: that his counsel fell below an objective standard of reasonableness (*id.* at 690, 104 S.Ct. 2052) and that there is a reasonable probability that but for counsel's inadequacy the result of the proceedings would have been different (*id.* at 694, 104 S.Ct. 2052). In this case the attorneys' performance was certainly far from stellar. Maxwell contends that their concededly less-than-perfect performance sank to the level of unconstitutional deficiency because the lawyers began the trial with opening arguments claiming that Maxwell had an alibi, but then called only one alibi witness (despite the presence of others who might have testified) and ultimately deserted that defense in the closing argument.

True enough, counsel's closing argument did not specifically mention the alibi defense as such. But counsel did urge that Maxwell did not commit the crime, something that was consistent with the alibi testimony and was supported by weaknesses in the eyewitness identification and in the evidence as to Maxwell's confession. Counsel also hinted in closing that even if the jury thought Maxwell committed the crime, they could acquit because he did not have the requisite intent for murder. If the attorneys believed the trial was not

going well (as indeed it was not), their strategy might very well have been to present the jury with an alternative justification for acquittal.

*Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052 calls for deference to attorneys' strategic decisions, and here this Court is not going to second-guess counsel's choices of which things to stress and which avenues not to pursue as vigorously. As for the failure to call more alibi witnesses, the State correctly points out that the decision to call witnesses is generally a matter of trial strategy. Maxwell's one alibi witness, his girlfriend's mother, testified that he was at her home with her daughter when the offense occurred, and that his mother telephoned while he was there. Maxwell argues now that additional witnesses should have been called. But Maxwell's attorneys may well have thought—and surely reasonably so—that Maxwell's mother and girlfriend would not be credible alibi witnesses, given their obvious personal interest in his acquittal (certainly less of a problem with the presumably more neutral girlfriend's mother).

Moreover, even if the performance of Maxwell's attorneys were to be viewed as deficient in that respect, Maxwell has not shown that it prejudiced the outcome of his trial. Evidence of his guilt was strong, and available defenses were weak. This Court accordingly denies relief on that ground.

*Ineffective Assistance of Counsel at Sentencing*

■ Maxwell raises three bases for his claim that his attorneys were ineffective at sentencing: (1) failure to investigate his educational and intellectual history; (2) failure to investigate his drug and alcohol use; and (3) failure to investigate other aspects of his criminal background and personal history. This opinion's discussion will begin with the first two claims, both of which assert counsel's failure adequately to investigate potential mitigating evidence. Because those issues were raised

in the state courts as a single claim of the failure to investigate mitigating evidence, they are not procedurally defaulted, and this opinion can turn to the merits.

On post-conviction review the state courts found that Maxwell had not satisfied the prejudice prong of the *Strickland* analysis with regard to his claim that his attorneys had failed to investigate mitigating evidence. Maxwell had argued—as he does here—that his attorneys presented incomplete, unscreened and inconsistent testimony at the sentencing hearing. In that respect he provided a great deal of additional information about his background that could have been presented at sentencing but was not. *Maxwell II,* 173 Ill.2d at 112, 219 Ill.Dec. 1, 670 N.E.2d at 683 rejected that claim in these terms:

> The gulf is relatively slight between what the trial judge knew from the reading of the presentence investigation report at the time of sentencing with respect to defendant's intellectual and developmental deficits and his drug and alcohol abuse and what defendant alleges in this regard in his amended post-conviction petition.

In her persuasive dissent Justice McMorrow rejected that characterization of the "gulf" between the information provided at the initial sentencing in the presentence report and the information sought to be provided by the plethora of exhibits introduced by post-conviction counsel—as she put it, that minimization by the majority opinion "is comparable to equating a blurred snapshot with a full-length documentary film" (*id.* at 138, 219 Ill.Dec. 1, 670 N.E.2d at 695). This Court agrees with Justice McMorrow. In accordance with the directive of Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts ("Section 2254 Rules"), this Court determines that an evidentiary hearing is required on Maxwell's claim of ineffective assistance of counsel at sentencing due to their failure to conduct an adequate investigation.

■ Although the Act restricts the ability of federal habeas courts to hold evidentiary hearings when the petitioner has failed to develop the facts in state court, it leaves in place the general discretion otherwise afforded district court judges in *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (overruled in a different respect in *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 5, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992)) to decide whether to hold a hearing (see *Cardwell,* 152 F.3d at 337, which said it was "join[ing] four of our sister circuits" in that respect—including our own Court of Appeals in *Burris,* 116 F.3d at 258–59). Here Maxwell is not at fault for having failed to develop the relevant facts in state court. After all, he did present affidavits and other documents supporting his arguments, and he was unable to develop and support various aspects of that evidence only because the state court denied him a hearing—a denial that is not attributable to Maxwell. Hence Section 2254(e)(2) does not apply. Furthermore, under *Townsend* Maxwell should receive an evidentiary hearing because the state did not afford him a full and fair hearing despite the viability of his claim.

Maxwell's presentence investigation report included snippets of information about his mental background and his drug and alcohol abuse (Ex. 17). But when read without the relevant context, that report suggests only that Maxwell was a drug abuser who did not do well in school—hardly mitigating evidence in a capital sentencing hearing. And when the only testimony offered at the sentencing hearing is considered in conjunction with the presentence report, that testimony—all of it offered by Maxwell's family and friends, who described him as a helpful, kind, intelligent friend and father who did not use drugs or alcohol—conveys the inevitable impression that the witnesses were (unsurprisingly) overstating and even falsifying their praise of Maxwell. That is sharply different from the voluminous evidence proffered on post-conviction review, which paints a very different picture of Andrew Maxwell. Those tendered documents offer proof of his life-

long mental and physical deficiencies, a family history of alcohol abuse and denial and his own resulting history of substance abuse.

Where then was that evidence in 1988 when Maxwell underwent his sentencing hearing? It was readily available if his attorneys had only undertaken some minimal investigation. Instead they called the friends and family members as witnesses without even discussing their testimony with them before the hearing. Such failure to interview the witnesses before they testified is of course the antithesis of any strategic decisions on the part of counsel. Counsel could hardly have had a "strategy" if they did not know what the witnesses were going to say. Indeed, the presentence report itself provided some clues that Maxwell had mental and substance abuse problems that his attorneys should have investigated.

As *Hall,* 106 F.3d at 749–50 teaches:

Where it is apparent from ... readily available sources of information, that the defendant has some mental or other condition that would likely qualify as a mitigating factor, the failure to investigate will be ineffective assistance.

That is precisely the case here: Maxwell's counsel had readily available sources of information—the presentence report, hospital records, public school records, the ability to conduct searching interviews with family members and friends before their testimony, and the possibility of psychological testing given the evidence of Maxwell's mental problems—yet counsel totally failed to follow through on any of them.

In denying Maxwell post-conviction relief on this ground, the Illinois Supreme Court relied heavily on the trial judge's statement that the outcome would have been no different if he had heard the additional evidence (*Maxwell II,* 173 Ill.2d at 112, 219 Ill.Dec. 1, 670 N.E.2d at 683). But that determination is not at all conclusive. It is still subject to the "unreasonableness" review of Section 2254(d) (see *Hall,* 106 F.3d at 752)—a review that will

be much aided by a hearing to develop further the mitigating evidence presented on state, and now on federal, post-conviction review. Indeed, the importance of such a hearing is highlighted by the trial judge's statement at sentencing (R. 1486):

I don't see any mitigating factors. I don't see a single mitigating factor, and for that reason, sir, I am dutybound to impose the ultimate penalty.

Nothing could better demonstrate the importance of presenting a complete picture of Maxwell to the sentencing court to see whether the judge might then have discerned any mitigating factor or factors leading to the imposition of a sentence other than death. In sum, this Court grants Maxwell a hearing on the issue of his sentencing attorneys' failure to investigate and to proffer mitigating evidence.

■ Maxwell fashions his third sentencing ineffectiveness claim as the failure to investigate other aspects of his criminal background and personal history. To the extent that his language refers to his attorneys' failure to investigate his family history and other personal aspects of his life as potential mitigating evidence, the just-completed analysis applies. But Maxwell in his Petition argues the final claim as though he were critiquing his attorneys' unfamiliarity with the "other crimes" evidence and their handling of his guilty pleas to other offenses. As the State accurately points out, those charges were never brought before a state court and therefore face a procedural default barrier. Because Maxwell has alleged neither cause and prejudice nor a miscarriage of justice as those concepts are explained in *Coleman* and like cases, he has no way around that barrier.

*Waiver of Sentencing Jury*

Maxwell also advances several claims challenging his waiver of a sentencing jury. They will be dealt with seriatim.

■ Maxwell's first two claims involve his attorney's advice that he should waive a jury for sentencing because the judge

would not impose the death penalty. Maxwell claims both that such advice constituted ineffective assistance of counsel and that it rendered his waiver unknowing and involuntary. Neither of those claims has been procedurally defaulted, because Maxwell raised both in his state post-conviction petition (*Maxwell II,* 173 Ill.2d at 112–16, 219 Ill.Dec. 1, 670 N.E.2d at 683–85).[8]

At sentencing just as at trial, ineffectiveness claims under *Strickland* require a demonstration of both a performance deficiency by counsel and resulting prejudice to defendant. When a jury waiver is at issue, a defendant can meet the prejudice prong by showing a "reasonable probability" that the defendant would not have waived that right absent the alleged deficiency on counsel's part (*Hill v. Lockhart,* 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)).

Here the Illinois Supreme Court found that Maxwell could not demonstrate the prejudice required by *Strickland* because his sentencing attorneys relied on three independent strategic grounds when recommending that Maxwell waive a jury for sentencing: (1) their belief that the judge had given them a sign he would not impose death; (2) their desire to preclude death-qualification of the jury under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968) in the trial that would decide on Maxwell's substantive guilt; and (3) their desire to avoid sentencing by jurors who had been exposed to evidence of Maxwell's other offenses during trial. Even if one or two of those grounds were to prove invalid, there is nothing to indicate that counsel would not have made the same recommendation based on the other valid ground or grounds.

Maxwell has challenged in state court, and now challenges here, the first and

third of the reasons relied on by his attorneys. There is no question that the attorneys' dependence on the third ground was incorrect (more on that later), because under Illinois law the evidence of other crimes was admissible at sentencing (*Maxwell I,* 148 Ill.2d at 143, 170 Ill.Dec. 280, 592 N.E.2d at 973). Yet even if Maxwell were correct that the first ground was also invalid, leaving the attorneys only with their second rationale for recommending jury waiver—their desire not to have a death-qualified jury at the guilt stage— they still had a compelling reason to waive a jury for sentencing. In *Hill v. Lockhart* terms, the state court came to a reasonable decision when it determined that there was no reasonable probability that Maxwell would have made a different decision.

Moreover, the first-mentioned factor cannot be characterized in terms of "right" or "wrong" so as to bring the attorneys' performance below minimum constitutional requirements. Whether to request a judge or jury sentencing is a strategic decision, one often based on the attorneys' assessment of the likelihood that a particular judge will be lenient—just as the choice between a bench and jury trial involves strategic considerations (see *Green v. Lynaugh,* 868 F.2d 176, 178 (5th Cir.1989) (per curiam)). Certainly Maxwell's attorneys' recommendation to waive a jury because they believed the judge would be less likely to impose the death penalty falls within the range of reasonably competent performance.

Nor is Maxwell entitled to relief based on his argument that the incompetent advice led to an unknowing and unintelligent waiver on his part. In that regard his attorneys informed him of their opinion (one that could not be labeled as unreason-

---

**8.** Although the government asserts that the unknowing waiver claim is procedurally defaulted, an examination of Maxwell's post-conviction materials (Ex. F at 32–34) reveals that he provided the state court with the opportunity to rule on that claim. Part of the confusion is no doubt created by the fact that

*Maxwell II* treated the claim as one of ineffectiveness only. In fairness, though, Maxwell raised before the state court both ineffectiveness and involuntary waiver claims stemming from his attorneys' communication with him about the hoped-for leniency of the judge.

able) that the judge would be lenient, something that he took into account in making the ultimate decision to waive a jury for sentencing. Maxwell has not shown that such waiver was either unknowing or unintelligent on that score.

Maxwell's third challenge to his jury waiver asserts that it was unknowing and unintelligent because the trial judge failed to ask Maxwell whether a promise had been made to induce him to waive his jury right for sentencing. Maxwell raised that same argument in his state court collateral attack, thereby avoiding procedural default barriers. But in *Maxwell II*, 173 Ill.2d at 116–19, 219 Ill.Dec. 1, 670 N.E.2d at 685–86 the Illinois Supreme Court reasonably determined that the colloquy between the trial judge and Maxwell had fully explored and demonstrated the knowledge, understanding and voluntariness of Maxwell's waiver, so that relief here must be denied.

▇▇ Fourth, Maxwell also asserts that his waiver was unknowing and unintelligent because his attorneys did not explain their reluctance to "death-qualify" the jury and because the trial judge did not inquire into Maxwell's understanding of the strategic rationale for waiver of the sentencing jury. Maxwell raised neither of those claims to the state court, nor has he explained why his default should be excused. That basis for relief is also rejected.

Maxwell's fifth and final ground for challenging his jury waiver really comprises two arguments: (1) his waiver was unintelligent because he received incompetent advice from his attorneys about the admissibility of "other crimes" evidence at sentencing, and (2) that advice constituted ineffective assistance of counsel. That claim is not procedurally defaulted because Maxwell raised it on direct appeal, where the Illinois Supreme Court found that he had met neither the performance nor prejudice prongs of the ineffectiveness analysis, and also that the jury waiver was valid (*Maxwell I*, 148 Ill.2d at 142–46, 170 Ill. Dec. 280, 592 N.E.2d at 972–74). Al-

though this Court views the state court's analysis as somewhat faulty, it nonetheless denies Maxwell relief on this ground.

*Maxwell I* found that Maxwell's attorneys were not ineffective because despite their ignorance of Illinois law, they still met their goal in waiving a jury for sentencing. Those attorneys were indisputably mistaken about Illinois law when they stated—both to Maxwell and in open court—that the "other crimes" evidence admitted at trial would be inadmissible at sentencing. According to one aspect of the Illinois court's opinion, that plain mistake caused no prejudice because the attorney in question "achieved her avowed goal of not having the sentencing determination submitted to a jury if its members were aware of the defendant's criminal history" (*id.* at 146, 170 Ill.Dec. 280, 592 N.E.2d 960.)

But that was not the goal at all. Maxwell's counsel's "avowed goal" was to prevent the sentencer—whether judge or jury—from taking Maxwell's criminal background into consideration. If his attorneys had realized that such a goal was unattainable under Illinois law, it is hard to see how they could have relied on such reasoning in recommending that he waive the sentencing jury.

But Maxwell still has not demonstrated the requisite prejudice attributable to the jury waiver. As already explained, even if both the "other crimes" rationale and the leniency rationale were to be knocked out, Maxwell's attorneys still had one persuasive reason to recommend a jury waiver for sentencing: They did not want to death-qualify the jury, something that respected statistical studies have shown to produce juries more likely to return verdicts of "guilty." Furthermore, the realization that any sentencer, whether judge or jury, would be able to hear and consider "other crimes" evidence at sentencing would certainly not constitute a reason *not* to waive a jury. It is at worst simply neutral.[9]

9. Indeed, there is good reason to believe that

a judge, who is consistently called upon in

In summary, there is every reason to think that even looked at separately, the desire to avoid a death-qualified jury would of itself be a potent reason to waive a jury for sentencing. This Court therefore finds that Maxwell's attorneys were not constitutionally ineffective because they relied on a mistaken view of Illinois law, and that Maxwell's waiver of a sentencing jury was valid in that respect as well.

### Brady Violation

Maxwell's next contention is that the prosecutors violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) by withholding exculpatory information about police officers' widespread (and indeed systematic) physical abuse of prisoners in the Area 2 Violent Crimes division. It is now common knowledge that in the early to mid–1980s Chicago Police Commander Jon Burge and many officers working under him regularly engaged in the physical abuse and torture of prisoners to extract confessions.[10] Both internal police accounts and numerous lawsuits and appeals brought by suspects alleging such abuse substantiate that those beatings and other means of torture occurred as an established practice, not just on an isolated basis. Maxwell has asserted since before his trial that the officers who interrogated him at Area 2 in November 1986 beat a confession out of him. In fact, the public defender initially assigned to Maxwell's case states that he had photographs taken of Maxwell's bruises a week after the interrogation occurred, although that evidence is now missing (Ex. 3). Maxwell's pretrial motion to suppress the confession was denied, and he did not appeal that denial on direct appeal.

bench trials and all types of hearings to eliminate from consideration evidence that has been ruled inadmissible, is far better able to do so than lay jurors—persons as to whom we only assume the ability to honor the court's instructions to take no account of such matters, even though we may recognize that as no more than an improbable premise that is essential to the trial process.

By the time Maxwell filed his state post-conviction petition, however, evidence of the pattern of police brutality at Area 2—including allegations against three of the officers who interrogated him—had become public. Maxwell understandably attempted to use that evidence in his state post-conviction proceedings. But the judge who heard his petition (the same judge who had tried Maxwell's case and had denied his motion to suppress in the first instance) refused to hold an evidentiary hearing to allow Maxwell to develop the new evidence. In fact, the judge flatly refused to consider it at all (Ex. 35 at 5–6):

I specifically don't care what John [sic— it's really Jon] Burge did at Area 2. I don't think John Burge has anything to do with this case whatsoever. We are not going to retry the *Wilson* case in this courtroom, and I wouldn't turn any of that stuff over if I were the People of the State of Illinois.... I am going to tell you it is not going to come out in a hearing here. That has been gone through four or five times in other courts. It is not going through this courtroom. John Burge probably doesn't have a clue who Andrew Maxwell is. That's out. That's out.

In its review of the denial of post-conviction relief, the Illinois Supreme Court considered Maxwell's argument that his rights were violated due to the coerced confession and the state's failure to disclose information about the systematic abuses at Area 2.[11] That court denied relief on those grounds because it credited the trial judge's initial pretrial determination that Maxwell had not been subject to physical abuse (*Maxwell II*, 173 Ill.2d at 120–22, 219 Ill.Dec. 1, 670 N.E.2d at 687–88).

10. See, e.g., *People v. Wilson,* 116 Ill.2d 29, 106 Ill.Dec. 771, 506 N.E.2d 571 (1987), finding that Andrew Wilson had been beaten into confessing. Wilson's allegations culminated in a successful Section 1983 action (see *Wilson v. City of Chicago,* 120 F.3d 681 (7th Cir.1997)).

11. Maxwell therefore faces no procedural default barriers to this claim.

Maxwell now asks for an evidentiary hearing and the opportunity to conduct discovery relating to his allegedly coerced confession, relief that this Court finds should be granted. For the same reasons that Section 2254(e)(2) did not bar an evidentiary hearing on Maxwell's ineffectiveness at sentencing claim, it does not do so here. Maxwell is not at fault for having failed to develop the relevant facts in state court.

Under *Townsend* Maxwell is entitled to an evidentiary hearing in that respect now, because the State never did afford him such a full and fair hearing. Although the state court had been, and this Court has now been, presented with a partial paper record about the pattern of violence at Area 2, important facts still need development, such as when the prosecution knew or should have known about the allegations of widespread abuse at Area 2. In addition, credibility determinations are particularly important to the issues at stake and should not be made from documentary evidence.

▆ It is true that Maxwell faces another hurdle in the procedural gauntlet of habeas review on his *Brady* claim, but it is one that he is able to clear. Habeas courts are required to defer to state court fact findings, particularly under the new Act's Section 2254(e)(1). But that statutory section does not require that courts "blindly apply the presumption of correctness" if "the trial court never conducted an adequate hearing" (*Porter*, 112 F.3d at 1316), as was the case here. At this stage this Court need not defer to the trial judge's assessment that no physical abuse occurred.[12]

▆ Maxwell also is entitled to conduct discovery. *Bracy v. Gramley*, 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) addressed a claim by a habeas petitioner who argued his rights had been violated because of late-discovered systematic corruption on the part of the judge who convicted and sentenced him. There the Supreme Court unanimously found that the petitioner had presented enough evidence to demonstrate "good cause" under Section 2254 Rule 6(a) to support the conduct of discovery into whether the judge's taking bribes had led to unduly harsh treatment of the petitioner, who had not provided bribe money. Maxwell likewise does not rely on bare unfocused allegations of abuse in claiming that the pattern of abuse affected him directly. Instead he provides evidence that during the time period that he was in custody he was interrogated by officers who have since been implicated in charges of such abuse. Maxwell also has continually insisted since before his trial that he was beaten at Area 2, and a public defender has stated that he saw evidence of the beating.

In summary, the conclusion on this facet of the Petition is clear. Maxwell has demonstrated a sufficient basis for his constitutional claims to warrant both discovery and a hearing so that this Court can address his contentions on a more informed basis.

### State's Failure To Hold Post–Conviction Evidentiary Hearing

▆ Next Maxwell argues that the State's failure to provide him with an evidentiary hearing on several of his colorable constitutional claims violates his Fourteenth Amendment right to due process. More specifically, he asserts that he was entitled to such a hearing to develop evidence of his unknowing jury waiver, his ineffective attorneys and his coerced confession.

12. Although this Court is not now called upon to decide whether the state court's conclusion was based on an unreasonable interpretation of the facts in violation of Section 2254(d)(2), it is worth observing that the Illinois Supreme Court's determination of the trial judge's correctness in finding no physical abuse—even though he did not have access to the voluminous information about the systematic Area 2 abuse, and even though Maxwell's attorney never had the opportunity to use that information to cross-examine the officers who testified at the suppression hearing—leaves something to be desired.

Under state law a petitioner is not entitled to an evidentiary hearing on post-conviction review "unless the allegations of his petition, supported where appropriate by the trial record or affidavits, make a substantial showing that his rights have been so violated" (*Maxwell II*, 173 Ill.2d at 107, 219 Ill.Dec. 1, 670 N.E.2d at 680). But that is indeed a matter of state law, and it is not this Court's province to grant federal habeas relief for any claimed violation of such state law (see Section 2254(a))—yet that is essentially what Maxwell is asking. To put the matter a bit differently, the acceptance of Maxwell's position would simply telescope the substantive issues into what this opinion has been discussing all along: Relief must be conditioned solely on violations of the United States Constitution. Maxwell's separate due process claim is rejected.

### Ineffective Assistance of Appellate Counsel

Maxwell raises four claims of ineffective assistance of appellate counsel. Three of those mirror arguments that he made in his initial state post-conviction petition, and the fourth is a catchall category of ineffectiveness claims not raised either on direct appeal or in any post-conviction attack.

██ Maxwell faces an initial default problem with one of the first three claims—that his appellate counsel was ineffective in not arguing on direct appeal that due process required the judge to ask Maxwell whether any promises induced him to waive a sentencing jury. Although he had argued that point in his post-conviction petition in state circuit court, he withdrew that claim before the Illinois Supreme Court (Ex. F at ii). That withdrawal bars his attempt to raise the claim here,

for he is required to have allowed the highest court of the state the opportunity to hear his claim.[13] Even if that claim were not procedurally defaulted, the Illinois Supreme Court rejected the underlying due process claim on its merits on post-conviction review (*Maxwell II*, 173 Ill.2d at 119, 219 Ill.Dec. 1, 670 N.E.2d at 686–87), so no prejudice resulted from Maxwell's counsel's failure to raise it on direct review (*Stone v. Farley*, 86 F.3d 712, 717 (7th Cir.1996)).

Maxwell renews two other appellate ineffectiveness arguments that he had brought to the Illinois Supreme Court, therefore avoiding default: He seeks habeas relief because his attorney failed to argue on appeal that the trial counsel's closing constituted ineffective assistance of counsel and that Maxwell's confession was coerced. *Maxwell II*, 173 Ill.2d at 123, 219 Ill.Dec. 1, 670 N.E.2d at 688 did not address either of those ineffective appellate counsel claims directly, instead stating generally that any claims it had not specifically dealt with (such as those) were simply "without merit." Just as this Court has considered Maxwell's ineffective-assistance-at-trial claim de novo because the state court had not set forth its reasoning for rejecting that claim, it must now conduct an independent review of the currently-described claims.

██ Maxwell does not warrant relief on the initial claim that the appellate attorney should have argued that the closing argument constituted ineffectiveness. This opinion has already rejected the underlying claim on its merits, as did the state court (albeit summarily). That creates a difficult (if not impossible) burden for Maxwell in showing that he was prejudiced by the failure to bring the claim on

---

**13.** *Boerckel v. O'Sullivan*, 135 F.3d 1194, 1199 (7th Cir.), *cert. granted in part*, —— U.S. ——, 119 S.Ct. 508, 142 L.Ed.2d 421 (1998), provides a limited exception to the default doctrine when the petitioner raised an issue in the state Circuit Court but did not include it in a petition for discretionary review to the state Supreme Court. But it is unnecessary to speculate as to the outcome of that decision's review by the United States Supreme Court. By contrast, prisoners sentenced to death are granted an appeal as of right to the Illinois Supreme Court from the denial of their post-conviction petitions (see Ill.S.Ct. Rule 651(a)). *Boerckel's* rationale therefore does not apply here in any event.

direct appeal in state court. Because he has not done so, the claim fails.

For a quite different reason there is no need to address Maxwell's next claim, in which he argues the ineffectiveness of his appellate attorney in having failed to contend on direct appeal that his confession was coerced. Under normal appellate principles Maxwell's appellate counsel was confined to the existing trial court record, one on which it would have been most difficult to overturn the adverse determination by the trial judge. And this opinion has already granted discovery and an evidentiary hearing on Maxwell's *Brady* claim, to bring out the added and more recently learned facts as to police brutality at Area 2 that could bear on the validity of Maxwell's confession. Hence if Maxwell is shown to be entitled to relief on that score, nothing would be added by a like holding arising out of appellate counsel's handling of the direct appeal. Accordingly that claim is turned down on purely practical grounds.

Finally, Maxwell sets out a laundry list of grounds to support his contention that his counsel on direct appeal was ineffective in not having raised an ineffective-assistance-of-trialcounsel claim. But none of those grounds was presented to the state court on post-conviction review. Absent a showing of cause and prejudice or a miscarriage of justice, this Court cannot hear those claims. Maxwell has presented neither showing.[14] Those claims are rejected.

### *Edwards v. Arizona Claim*

Maxwell next asserts, as he did on direct appeal,[15] that he invoked his right to counsel at a preliminary hearing on pending unrelated robbery charges and then re-

mained in custody, when he was unconstitutionally interrogated by police about the Bracy murder. That chain of events, according to Maxwell, rendered the subsequent police-initiated interrogation violative of *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981) and *Arizona v. Roberson,* 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

*Roberson, id.* at 682, 108 S.Ct. 2093 held that once a defendant invokes his Fifth Amendment *Miranda*-based right to counsel for interrogation regarding one offense, the police may not reapproach him regarding *any* offense until an attorney is present. By contrast, a defendant's *Sixth* Amendment right to counsel is "offense specific" and bars uncounseled interrogation relating only to the offense to which that Sixth Amendment right has attached (*McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). And *McNeil, id.* at 178, 111 S.Ct. 2204 makes it plain that an invocation of the Sixth Amendment right does not automatically carry with it an invocation of the Fifth Amendment right.

In Maxwell's case the issue turns on whether he asserted his Fifth–Amendment–based right or his Sixth–Amendment–based right at his preliminary hearing on the unrelated charges. On that score this Court finds that the Illinois Supreme Court's constitutional law determination was both reasonable (see Section 2254(d)(1)) and, indeed, entirely correct (*Maxwell I,* 148 Ill.2d at 129, 592 N.E.2d at 966, 170 Ill.Dec. at 286):

> The defendant's acceptance of the appointment of counsel at the preliminary hearing on the unrelated offenses occurring November 3 did not also oper-

---

**14.** Nor does it appear that he could have. First, he cannot assert the ineffective assistance of post-conviction counsel as an excuse for the failure to raise the ineffective assistance of appellate counsel, because "[t]here is no constitutional right to an attorney in state post-conviction proceedings" (*Coleman,* 501 U.S. at 752, 111 S.Ct. 2546). Further, no external impediment prevented any of the grounds from being raised on post-conviction

review (see *Amadeo v. Zant,* 486 U.S. 214, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988)).

**15.** Because Maxwell raised the claim on direct appeal, he now faces no procedural default problems. That also follows for each of the claims addressed in the rest of this opinion, all of which claims had been raised in the state court system.

ate as an invocation of his separate right to counsel, under *Miranda,* for purposes of questioning on the present offenses. The sixth amendment right to counsel, invoked by the defendant at the preliminary hearing when he accepted the appointment of counsel, was "offense specific"; it did not also operate prospectively as an assertion of the separate *Miranda* right to counsel in future questioning on different charges, such as those at issue here.

Accordingly this Court denies Maxwell's Petition on that ground.

### Other Crimes Evidence

■ Maxwell also contended on direct appeal that he was deprived of his right to a fair jury because of the introduction of "other crimes" evidence at trial. He renews that challenge here. At trial the judge admitted evidence of three other offenses that were similar to the Bracy offense because they were relevant to show identity, and the Illinois Supreme Court found that the judge had not abused his discretion in so doing (*Maxwell I,* 148 Ill.2d at 130, 592 N.E.2d at 965, 170 Ill. Dec. at 287). In terms of the Section 2254(d)(1) formulation, this Court finds that the state court determination did not "result[ ] in a decision that was contrary to, or involve[ ] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."

### Felony Murder Instruction

Yet another argument by Maxwell on direct appeal was that his due process rights were violated by the trial court's jury instruction on the elements of felony murder, despite the fact that his indictment did not include felony murder. Because Maxwell's trial attorney knew-even before jury selection—that the State might rely on a felony murder theory, the state court reasonably denied relief on that ground.

### Sentencing Judge's Consideration of Mitigating Evidence

■ Maxwell further argued on direct appeal that the sentencing judge failed to consider the nonstatutory mitigating evidence presented at the sentencing hearing, thereby depriving Maxwell of his right to a fair death penalty hearing. To that end he relies primarily on the earlier-quoted statement by the judge:

> I don't see any mitigating factors. I don't see a single mitigating factor, and for that reason, sir, I am dutybound to impose the ultimate penalty.

Although Maxwell rightly says that the sentencing authority in a capital case may not refuse to consider relevant mitigating evidence, it is still within the sentencer's province to determine the appropriate weight (if any) to give the evidence that has been presented *and* considered (see *Eddings v. Oklahoma,* 455 U.S. 104, 114–15, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)). Here the Illinois Supreme Court's assessment that the trial judge's remarks taken as a whole indicated he had taken the potentially mitigating evidence into account, but did not find it persuasive enough to preclude imposition of the death penalty (*Maxwell I,* 148 Ill.2d at 148–49, 592 N.E.2d at 975, 170 Ill.Dec. at 295), was neither contrary to nor unreasonable in light of existing Supreme Court precedent. That claim also fails.[16]

16. Denial of relief on that ground is not inconsistent with the earlier grant of a hearing on Maxwell's sentencing ineffectiveness claim—a claim that relied on the same language in the judge's sentencing statements. Taken as a whole, the trial judge's statements indicate that he considered all of the evidence presented—the just-addressed fair-hearing issue—but that he did not find the evidence presented by Maxwell persuasive. By contrast, the earlier ineffectiveness issue centered on whether the judge would likely have come to a different result had he been presented with the further evidence developed for post-conviction attack. There is no collision between the trial judge's view that the testimony presented at the 1988 sentencing hearing provided no mitigating factors and the prospect that the outcome could well have been different had additional evidence been presented. His statement does not mean the judge never considered the evidence that *was* presented.

### Unconstitutionality of the Death Penalty Statute

Finally, Maxwell's claims that the Illinois death penalty statute is unconstitutional are denied. In that respect the Illinois Supreme Court's determination of the scheme's constitutionality was reasonable in Section 2254(d)(1) terms.

### Conclusion

With the morass of procedural issues presented by Maxwell's Petition having been explored, it is in order to summarize the conclusions reached here. Maxwell's request for an evidentiary hearing is granted on two (but only two) subjects: (1) the asserted ineffective assistance of counsel at sentencing in having failed to investigate adequately and (2) the claimed *Brady* violation in failing to disclose evidence of a pattern of police abuse at Area 2. Further, Maxwell may conduct discovery on the *Brady* claim. Maxwell's remaining claims for relief are rejected.

For the present, then, both the Petition (as limited by this opinion) and this action remain viable. There will be a status hearing at 9 a.m. March 23, 1999 to discuss the posture of the case and any further proceedings.