Docket No. 109469.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

REGINIA WILLIAMS, Appellee, v. THE BOARD OF REVIEW, an Administrative Agency of the State of Illinois, *et al.*, Appellants.

*Opinion filed March 24, 2011.*

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

At issue is whether appellee, Reginia Williams, is eligible to receive trade readjustment allowance (TRA) benefits under the federal Trade Act of 1974 (Act) (19 U.S.C. §2101 *et seq.* (2006))[1]. The Board of Review (Board) of the Illinois Department of Employment Security (Department) denied Williams TRA benefits because she had missed a statutory deadline for enrollment in an approved training program. The circuit court of Cook County confirmed the Board's decision, and the appellate court reversed (395 Ill. App. 3d 337).

---

[1]All citations to the Act are to that version in existence prior to the amendments adopted in 2009 as Pubic Law 111–5.

We now affirm the judgment of the appellate court, albeit for reasons different from those advanced by that court.

## BACKGROUND

To better understand the facts of this case, and to give them some context, we begin with an overview of the federal legislation.

### The Act

As set forth in the congressional statement of purpose, the Act is intended to foster economic growth and full employment in the United States, reduce trade barriers, and generally open up new market opportunities. 19 U.S.C. §2102. The Act is also intended "to provide adequate procedures to safeguard American industry and labor against unfair or injurious import competition, and to assist industries, firm[s], workers, and communities to adjust to changes in international trade flows." 19 U.S.C. §2102(4). To this end, the Act provides various forms of relief from injury caused by import competition. See 19 U.S.C. §§2251 through 2401g. Specific to an "adversely affected worker"–a worker who has been "separated from employment" (19 U.S.C. §2319(2))–the Act provides "trade adjustment assistance" (TAA) in the form of "counseling, testing, training, placement, and other supportive services," with the goal of achieving reemployment. 20 C.F.R. §§617.1(a), 617.2, 617.3(nn) (2006); 19 U.S.C. §§2295 through 2298. In addition, the Act provides for the payment of a TRA, a cash allowance payable to qualifying workers to supplement state unemployment insurance benefits. 19 U.S.C. §§2291 through 2293; 20 C.F.R. §§617.1(b), 617.3(nn), 617.11.

TAA and TRA benefits are only available to workers covered by a "certification of eligibility." 19 U.S.C. §§2271, 2291. To obtain a certification, a group of workers, their union or other representative, or their employer must file a petition with the Secretary of Labor (Secretary) indicating that the threatened or actual job losses are the result of import competition or a shift in production to a foreign country. See 19 U.S.C. §§2271, 2272. If, after investigation, the Secretary agrees, the Secretary issues a certification of eligibility for benefits. 19 U.S.C. §2273. A worker covered by a certification must still satisfy other statutory conditions before payment of TRA benefits

can be made. 19 U.S.C. §2291; 20 C.F.R. §617.11. One such condition, relevant to this appeal, focuses on job training. 19 U.S.C. §2291(a)(5); 20 C.F.R. 617.11(a)(2)(vii)(A). If the worker has not already completed a training program approved by the Secretary, or has not obtained a waiver of training, the worker must be enrolled in an approved program by the latest of:

"(I) the last day of the 16th week after the worker's most recent total separation from adversely affected employment ***,

(II) the last day of the 8th week after the week in which the Secretary issues a certification covering the worker, [or]

(III) 45 days after the later of the dates specified in subclause (I) or (II), if the Secretary determines there are extenuating circumstances that justify an extension in the enrollment period[.]" 19 U.S.C. §2291(a)(5)(A)(ii).

The deadline established in subsections (I) and (II) above is generally referred to by the Department of Labor as the "8/16 week deadline." See, *e.g.*, 69 Fed. Reg. 60,903 (Oct. 13, 2004).

TRA benefits, though funded by the federal government, are administered locally by the Department, as agent of the United States, pursuant to a cooperative agreement with the Secretary. 19 U.S.C. §§2311(a), 2313. The Department is obligated to notify workers about the availability of TAA and TRA benefits at two distinct times. First, the Department must advise each worker, at the time the worker first applies for state unemployment insurance, of the benefits under the Act, including the procedures and deadlines for applying for such benefits. 19 U.S.C. §2311(f); 20 C.F.R. §§617.4(e)(1), 617.10(d). Second, upon receipt of a certification of eligibility from the Secretary, the Department must provide notice by mail to each worker covered by that certification. 20 C.F.R. §617.4(d)(1)(i). The written notice must include an explanation of how, when and where workers can apply for benefits. 20 C.F.R. §617.4(d)(1)(ii). To effect notice by mail, the Department is required to obtain from the employer, or other reliable source, the names and addresses of all adversely affected workers covered by the certification. 20 C.F.R. §617.4(d)(1)(ii).

With this background, we turn to the present dispute.

-3-

Williams' Case

On April 21, 2006, Williams' employment with Chicago Castings Company was terminated due to the permanent closing of that facility. Williams had been employed at the company for over nine years. The termination notice the company gave to Williams stated that she may use the notice to apply for unemployment benefits. The notice did not refer to TAA or TRA benefits. Two days later, Williams applied for unemployment insurance benefits in person at her local unemployment office. Williams explained where she had worked and why she was laid off. The Department did not advise Williams that she might be eligible for TRA benefits or provide any information to her about TRA benefits generally. On June 21, 2006, the Secretary certified that Chicago Castings' workers were eligible to apply for benefits under the Act. Williams was not on the list of workers the Department obtained from Chicago Castings, and the Department never notified Williams that she could apply for TRA benefits.

Williams first learned from a coworker, on or about October 10, 2006, about the possibility of being paid while obtaining training. The coworker, who had worked in a different department than Williams, said that she had received a letter explaining the program. Based on this conversation, Williams believed that her unemployment insurance benefits were the same as her coworker's TRA benefits. After exhaustion of her unemployment insurance benefits in December 2006, and after learning that there would be no extension, Williams contacted her local unemployment office and inquired about TRA benefits. As instructed, Williams obtained an appointment at the Department's local office on December 12, 2006. Williams was advised that she was not in the system for TRA benefits or on the list to whom outreach letters had been sent. Williams immediately applied for TRA benefits and sought a waiver of the training requirement. That same day, the Department, through its local TAA administrator, denied Williams benefits because she had missed the 8/16 week deadline for enrollment in an approved training program.

Under the 8/16 week deadline, Williams was required to be enrolled by the later of August 12, 2006 (the last day of the 16th week after she was laid off), or August 17, 2006 (the last day of the 8th week after the Secretary's certification). If extenuating circumstances existed, the enrollment deadline could have been extended 45 days to

-4-

October 2, 2006.

Williams immediately sought reconsideration, explaining that she had not been advised of TRA benefits. On December 27, 2006, the Department again ruled she was ineligible. Williams appealed that decision, which resulted in a telephone hearing conducted by a Department referee in May 2007. Williams testified generally to the facts set forth above and argued that, under these circumstances, equitable tolling should apply. The referee found, as a matter of fact, that Williams did not apply for benefits earlier than December 12, 2006, "because she was unaware of possible eligibility prior to that time." The referee determined that while the reason for Williams' failure to be enrolled in an approved training program was a "compelling" one, he was without authority to overlook the statutory deadline.

Williams appealed the referee's decision to the Board, again arguing that the decision should be reversed because the Department failed to comply with its statutory obligation to provide notice to her about the procedures and deadlines for TRA benefits. Williams cited a federal regulation which provides a "good cause" exception to the application deadline where notice is not provided. See 20 C.F.R. §617.10(b). Williams further argued that under the doctrine of equitable tolling her TRA application should be deemed timely. Alternatively, Williams argued that the 8/16 week deadline does not apply to training waivers, and that the matter should be remanded to the Department to determine whether she qualifies for a waiver under the Act.

The Board rejected Williams' arguments and affirmed the referee's decision. The Board determined that (i) equitable tolling and equitable estoppel do not bar application of the 8/16 week deadline; (ii) the federal regulation on which Williams relied has been superceded by the later adoption of the 8/16 week deadline; and (iii) the 8/16 week deadline applies to both enrollment in training and obtaining a waiver of training.

Williams filed a complaint for administrative review in the circuit court of Cook County, which confirmed the Board's decision. Williams appealed. The appellate court reversed, holding that the 8/16 week deadline should be extended pursuant to the "good cause" exception in the governing federal regulation, and remanded the

matter to the Department for a determination as to the amount of benefits to which plaintiff is entitled. 395 Ill. App. 3d at 340-41 (citing 20 C.F.R. §617.10(b)). We allowed the Board's petition for leave to appeal. See Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

ANALYSIS

I

Under the Act, the Board's decision regarding entitlement to TRA benefits is "subject to review in the same manner and to the same extent" as decisions under our state Unemployment Insurance Act (820 ILCS 405/100 *et seq.* (West 2008)). 19 U.S.C. §§2311(d), 2319(10); 20 C.F.R. §617.51(a). That statute, in turn, provides that a decision of the Board is reviewable in accordance with the provisions of the Administrative Review Law (735 ILCS 5/3–101 *et seq.* (West 2008)). 820 ILCS 405/1100 (West 2008). Review extends to "all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3–110 (West 2008). Here, the initial questions we address are purely legal: whether the 8/16 week deadline is subject to equitable tolling or equitable estoppel and, if not, whether the good-cause exception set forth in section 617.10(b) of title 20 of the Code of Federal Regulations is still valid. On these questions, our review proceeds *de novo*. See *Carpetland U.S.A., Inc. v. Illinois Department of Employment Security*, 201 Ill. 2d 351, 369 (2002). We turn first to the issue of equitable tolling.

II

In determining whether the 8/16 week deadline, a provision of a federal statute, is subject to equitable tolling, we are bound by decisions of the United States Supreme Court bearing on that issue. *Bowman v. American River Transportation Co.*, 217 Ill. 2d 75, 91 (2005). In the absence of Supreme Court precedent, and based on the need for uniformity in the application of a federal statute, we will look to decisions of the federal circuit and district courts as persuasive authority. *Bowman*, 217 Ill. 2d at 91.

Generally, the doctrine of equitable tolling permits a court to excuse a plaintiff's failure to comply with a statute of limitations where "because of disability, irremediable lack of information, or other

circumstances beyond his control," the plaintiff cannot reasonably be expected to file suit on time. *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996). Unlike the related doctrine of equitable estoppel, equitable tolling requires no fault on the part of the defendant. *Miller*, 77 F.3d at 191; see also *Tregenza v. Great American Communications Co.*, 12 F.3d 717, 721 (7th Cir. 1993) ("Equitable tolling just means that without fault by either party the plaintiff does not have enough information to sue within the period of limitations***."); *Lehman v. United States*, 154 F.3d 1010, 1016-17 (9th Cir. 1998) ("Equitable tolling focuses primarily on *the plaintiff's* excusable ignorance of the limitations period," whereas "[e]quitable estoppel focuses on the actions of *the defendant*" (emphases in original)).

A "nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in *favor* 'of equitable tolling.' " (Emphasis in original.) *Holland v. Florida*, 560 U.S. ___, ___, 130 S. Ct. 2549, 2560 (2010) (quoting *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95-96 (1990)).[2] Based on the presumption, application of the doctrine turns on the answer to the query: "Is there good reason to believe that Congress did *not* want the equitable tolling doctrine to apply?" (Emphasis in original.) *United States v. Brockamp*, 519 U.S. 347, 350 (1997) (citing *Irwin*, 498 U.S. 89). Congress is presumed to draft limitations periods in light of this presumption (*Young v. United States*, 535 U.S. 43, 49-50 (2002)), which operates in suits against private parties, as well as in suits against the federal government (*Irwin*, 498 U.S. at 95-96).

Equitable tolling is not applied exclusively to traditional limitation periods for filing suit. The doctrine has also been applied to other statutory and administrative deadlines. See, *e.g.*, *Young*, 535 U.S. at 47 (holding that the Bankruptcy Code's three-year lookback period, which prescribes a period in which certain rights may be enforced, is subject to equitable tolling); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (holding that the timely filing of a discrimination

---

[2]The term "nonjurisdictional" means that the limitations provision is a defense, like other threshold barriers to suit, which the defendant forfeits if not raised, and which the court is not obligated to raise *sua sponte*. *Day v. McDonough*, 547 U.S. 198, 205 (2006). The Board makes no argument that the 8/16 week deadline is anything other than a nonjurisdictional time limit.

charge with the Equal Employment Opportunity Commission is a requirement, like a statute of limitations, that is subject to waiver, estoppel, and equitable tolling). Pertinent here, the doctrine has been applied to toll various time limits contained in the Act.

In *Former Employees of Sonoco Products Co. v. Chao*, 372 F.3d 1291, 1296-98 (Fed. Cir. 2004), the federal court of appeals held that equitable tolling applies to the Act's 60-day deadline for contesting the denial of a certification petition for benefit eligibility (19 U.S.C. §2395(a)). Accord *Anderson v. United States Secretary of Agriculture*, 30 Ct. Int'l Trade 1742, 1744 n.6, 462 F. Supp. 2d 1333, 1335 n.6 (2006); *Former Employees of Quality Fabricating, Inc. v. United States Secretary of Labor*, 27 Ct. Int'l Trade 419, 422-24, 259 F. Supp. 2d 1282, 1285-86 (2003); *Former Employees of Siemens Information Communication Networks, Inc. v. Herman*, 24 Ct. Int'l Trade 1201, 1205-08, 120 F. Supp. 2d 1107, 1111-14 (2000).

Additionally, the Court of International Trade,[3] in *Former Employees of Fisher & Co. v. United States Department of Labor*, 31 Ct. Int'l Trade 1272, 1278-79, 507 F. Supp. 2d 1321, 1329 (2007), held that equitable tolling applies to the Act's one-year deadline for filing a petition for TAA certification (19 U.S.C. §2273(b)(1)). The same court also held, in *Lady Kelly, Inc. v. United States Secretary of Agriculture*, 30 Ct. Int'l Trade 186, 188-90, 427 F. Supp. 2d 1171, 1174-75 (2006), that equitable tolling applies to the Act's 90-day deadline for applying for benefits after a petition is certified (19 U.S.C. §2401e(a)(1)). Accord *Truong v. United States Secretary of Agriculture*, 30 Ct. Int'l Trade 1512, 1513, 461 F. Supp. 2d 1349, 1351 (2006).

---

[3]The Court of International Trade, established under article III of the Constitution of the United States (28 U.S.C. §251 (2006)), has exclusive jurisdiction of certain civil actions commenced against the United States, and its agencies and officers, including any civil action commenced to review a final determination of the Secretary of Labor, Secretary of Commerce, or Secretary of Agriculture with respect to eligibility of workers, firms, communities and agricultural commodity producers for TAA under the Act. 28 U.S.C. §1581; 19 U.S.C. §2395(a). Decisions of the Court of International Trade may be appealed to the United States Court of Appeals for the Federal Circuit (28 U.S.C. §1295(a)(5); 19 U.S.C. §2395(c)).

The Board argues that the deadlines in *Sonoco*, *Fisher* and *Lady Kelly* are similar to traditional limitations periods to which equitable tolling applies, but are dissimilar to the 8/16 week deadline which sets forth a requirement for benefit eligibility. We agree that the deadline in *Sonoco*, which established a time limit for contesting an adverse benefits decision, does not closely resemble the 8/16 week deadline. Thus, *Sonoco* lends little support for application of equitable tolling here.

The deadlines at issue in *Fisher* and *Lady Kelly*, however, do resemble the 8/16 week deadline. In each case, the statutory deadline that was subject to tolling set forth a time limit by which a claimant under the Act was required to complete some task as a condition of benefit eligibility. In *Fisher*, the task was the timely filing of a petition for TAA certification, and in *Lady Kelly* the task was the timely filing of an application for benefits after a petition was certified. Here, the task was timely enrollment in an approved training program. While this similarity militates in favor of applying equitable tolling to the 8/16 week deadline, we must consider, as the Supreme Court instructs, whether "there [is] good reason to believe that Congress did *not* want the equitable tolling doctrine to apply." (Emphasis in original.) *Brockamp*, 519 U.S. at 350.

In discerning congressional intent, where the agency charged with administration of the federal statute has answered the question before the reviewing court, the court need only decide whether that answer is based on a "permissible construction" of the statute. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984). Here, however, the federal agency charged with administering the Act–the Department of Labor–has not answered the question of whether equitable tolling can apply to the 8/16 week deadline. Since Congress adopted the deadline, the Department of Labor has not promulgated any regulation which addresses the applicability of equitable tolling generally, or the availability of tolling where, as here, notice to the worker was lacking.[4]

---

[4]Although the Department of Labor, in 1986, adopted, a "good cause" exception to the TRA application deadline (20 C.F.R. §617.10(b); 51 Fed. Reg. 45,840 (Dec. 22, 1986)), that regulation predates by several years the adoption by Congress of the 8/16 week deadline. See Trade Act of 2002

The Board directs our attention to the Department of Labor's "Training and Employment Guidance Letters" (TEGLs), certain of which the Board is obligated to follow pursuant to the Department's agreement with the Secretary. While the TEGLs may merit some deference (see *United States v. Mead Corp.*, 533 U.S. 218, 234-35 (2001)), the TEGLs do not address equitable tolling. To be sure, the TEGLs generally speak in terms of adhering to the 8/16 week deadline. See, *e.g.*, Department of Labor TEGL No. 11–02, Change 1, 69 Fed. Reg. 60,903 (Oct. 13, 2004). But a statement from the Department of Labor that the Act's deadlines should be followed is not tantamount to a statement that the deadlines must be followed in all cases and can never be relaxed, no matter the equities.

In the absence of guidance from the agency on the applicability of equitable tolling, courts will consider the language establishing the statutory deadline, the underlying subject matter and purpose of the statute, and the practical effect of applying the doctrine. See *Brockamp*, 519 U.S. at 350-51; *Burnett v. New York Central R.R. Co.*, 380 U.S. 424, 427 (1965); *Siemens*, 24 Ct. Int'l Trade at 1207-08, 120 F. Supp. 2d at 1113. To illustrate, in *Brockamp*, the Supreme Court considered whether equitable tolling could apply to the time limitations for filing tax refund claims set forth in section 6511 of the Internal Revenue Code of 1986 (26 U.S.C. §6511 (2006)). The Court initially focused on the forcefulness and complexity of the limitations provision:

> "Section 6511 sets forth its time limitations in unusually emphatic form. Ordinarily limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception. \*\*\*. But §6511 uses language that is not simple. It sets forth its limitations in a highly detailed technical manner, that, linguistically speaking, cannot easily be read as containing implicit exceptions. Moreover, §6511 reiterates its limitations several times in several different ways." *Brockamp*, 519 U.S. at 350-51.

---

(Pub. L. 107–210, 116 Stat. 933, 939). Accordingly, we do not view this regulation as necessarily indicative of the Department of Labor's position on whether equitable tolling can apply to the 8/16 week deadline.

The Court also observed that section 6511 contained explicit exceptions to its basic time limits, which did not include equitable tolling. *Brockamp*, 519 U.S. at 351. The Court further observed that tolling the time limits in section 651l would toll not only the procedural limitation, but would also affect the Internal Revenue Code's substantive limitations on the amount of recovery. *Brockamp*, 519 U.S. at 352. Finally, the Court considered the underlying subject matter–nationwide tax collection–and expressed strong concern that permitting tolling could create significant administrative problems by forcing the Internal Revenue Service to respond to, and perhaps litigate, large numbers of late claims, based on requests for equitable tolling without sufficient equitable justification. *Brockamp*, 519 U.S. at 352. The Court noted that the Internal Revenue Service processes more than 200 million tax returns and more than 90 million refunds each year, and concluded that "[t]he nature and potential magnitude of the administrative problem suggest that Congress decided to pay the price of occasional unfairness in individual cases *** in order to maintain a more workable tax enforcement system." *Brockamp*, 519 U.S. at 352-53. For these reasons, the Court held that equitable tolling would not apply to the deadline in section 6511. *Brockamp*, 519 U.S. at 354.

The Board argues that, similar to the Internal Revenue Code deadline in *Brockamp*, the 8/16 week deadline is "emphatic, mandatory, and technical" and thus not subject to equitable tolling. We disagree. The 8/16 week deadline is not written in a repetitive or unusually emphatic manner. The deadline appears once, as part of section 2291(a) of the Act, and the language is relatively straightforward. Section 2291(a) states that "[p]ayment of a trade readjustment allowance shall be made to an adversely affected worker *** if the following conditions are met." 19 U.S.C. §2291(a). One such condition is that the worker "is enrolled in a training program *** no later than the latest of–"

> "(I) the last day of the 16th week after the worker's most recent total separation from adversely affected employment ***, [or]
>
> (II) the last day of the 8th week after the week in which the Secretary issues a certification covering the worker[.]" 19 U.S.C. §2291(a)(5).

The deadline for enrollment is established simply by counting days from two relevant dates: the date the worker is laid off, and the date the Secretary's certification is issued. While not as simplistic as some statutory time limits, the 8/16 week deadline does not approach the complexity of the deadline at issue in *Brockamp* and is not so highly technical as to preclude an implicit tolling provision.

In addition, and also in contrast to *Brockamp*, tolling the 8/16 week deadline would not affect the substance of a worker's TRA benefits; it would simply remove a procedural obstacle in obtaining those benefits. Nor would tolling create the potential for administrative problems like those envisioned in *Brockamp*. Unlike the Internal Revenue Code, which applies broadly to millions of Americans, the Act applies only to certain qualifying workers who have been certified as eligible for TAA and TRA benefits by the Secretary. Though the Board claims that tolling would hamstring TRA administration, it provides no specifics as to why that is necessarily the case.

The only similarity between the deadline in *Brockamp*, which was not subject to tolling, and the 8/16 week deadline at issue here is that both enactments contain an exception to the statutory time limit. Under the Act, where "extenuating circumstances" exist, the 8/16 week deadline may be extended 45 days. 19 U.S.C. §2291(a)(5)(A)(ii)(III). The Board, seizing on this language, argues that Congress could not have intended for equitable tolling to apply.

Case law indicates that the inclusion of an express tolling provision that operates in limited situations does not necessarily preclude equitable tolling in other situations. For example, in *Holland*, the Supreme Court held that a provision in the federal *habeas corpus* statute which tolled the federal limitation period during the time the defendant has a petition for postconviction relief pending in state court does not bar equitable tolling in other situations. The Court explained:

> "[T]he fact that Congress *expressly* referred to tolling during state collateral review proceedings is easily explained without rebutting the presumption in favor of equitable tolling. A petitioner cannot bring a federal habeas claim without first exhausting state remedies–a process that frequently takes longer than one year. [Citation.] Hence, Congress had to

> explain how the limitations statute accounts for the time during which such state proceedings are pending. This special need for an express provision undermines any temptation to invoke the interpretive maxim *inclusio unius est exclusio alterius* (to include one item (*i.e.*, suspension during state-court collateral review) is to exclude other similar items (*i.e.*, equitable tolling))." (Emphasis in original.) *Holland*, 560 U.S. at ___, 130 S. Ct. at 2562.

See also *Young* 535 U.S. at 53 (inclusion of express tolling provision in the same section as the Bankruptcy Code's three-year lookback provision supplements, rather than displaces, principles of equitable tolling).

The Board argues that, unlike *Holland*, no "special need" underlies the 45-day tolling period contained in the Act. Assuming, *arguendo*, that the Board is correct, this aspect of the federal legislation is not, standing alone, determinative of whether the presumption in favor of equitable tolling applies. As *Brockamp* demonstrates, an express tolling provision is one circumstance, among many, which a court must consider. Moreover, any uncertainty about congressional intent based on the 45-day tolling provision dissolves when we consider, as we must, the purpose of the Act:

> "Trade Adjustment Assistance ('TAA') programs historically have been–and today continue to be–touted as the *quid pro quo* for U.S. national policies of free trade. [Citation.]

> As *UAW v. Marshall* explains, 'much as the doctrine of eminent domain requires compensation when private property is taken for public use,' the trade adjustment assistance laws similarly reflect the country's recognition 'that fairness demand[s] some mechanism whereby the national public, which realizes an overall gain through trade readjustments, can compensate the particular ... workers who suffer a [job] loss.' *UAW v. Marshall*, 584 F.2d 390, 395 (D.C. Cir. 1978).

> In short, absent TAA programs that are adequately funded and conscientiously administered, 'the costs of a federal policy [of free trade] that confer[s] benefits on the nation as a whole would be imposed on a minority of American workers' who

-13-

lose their jobs due to increased imports and shifts of production abroad." *Former Employees of BMC Software, Inc. v. United States Secretary of Labor*, 30 Ct. Int'l Trade 1315, 1316-17, 454 F. Supp. 2d 1306, 1307-09 (2006).

See also 19 U.S.C. §2102 (setting forth congressional statement of purpose).

The Act must be broadly construed to effect this remedial purpose. *BMC Software*, 30 Ct. Int'l Trade at 1320, 454 F. Supp. 2d at 1311; *Siemens*, 24 Ct. Int'l Trade at 1208, 120 F. Supp. 2d at 1113; see also 20 C.F.R. §617.52(a) (requiring liberal construction of the Act to carry out its purpose). Application of the doctrine of equitable tolling to the 8/16 week deadline furthers this purpose.

We recognize, as the Board notes, that the Act has been amended numerous times since its adoption in 1974, and that a greater focus has been placed on enrollment in an approved training program to expedite reemployment. See Omnibus Budget Reconciliation Act of 1981, Pub. L. 97–35, 95 Stat. 357 (adopting a provision authorizing the Secretary of Labor to require workers to accept training in certain circumstances); Omnibus Trade and Competitiveness Act of 1988, Pub. L. 100–418, 102 Stat. 1107, 1244 (adopting a training requirement as a condition of benefits); Trade Act of 2002, Pub. L. 107–210, 116 Stat. 933, 939 (adopting the 8/16 week deadline for enrollment in training). That focus, however, has not altered the remedial purpose of the Act as a whole, or the remedial purpose of the specific provisions defining the TRA program.

Based on the language of the Act, as well as its subject and purpose, and considering the practical implications of applying equitable tolling, we hold that the presumption in favor of equitable tolling applies to the 8/16 week deadline.

III

We next consider whether the doctrine of equitable tolling applies under the facts of this case. While we applied the *do novo* standard of review to the issue of whether the 8/16 week deadline *can* be tolled, we apply the clearly erroneous standard for mixed questions of law and fact to the issue of whether the deadline *should be* tolled. See *Carpetland U.S.A.*, 201 Ill. 2d at 369; *Truong*, 30 Ct. Int'l Trade at

1518, 461 F. Supp. 2d at 1355. Under this standard, we will reverse the Board's decision only if, after review of the entire record, we are " 'left with the definite and firm conviction that a mistake has been committed.' " *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 395 (2001) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)).

Where equitable tolling is available, federal courts typically extend it only "sparingly." *Irwin*, 498 U.S. at 96. The court's reluctance to apply tolling is based on "deference to Congress' decision to establish a deadline in the first place." *Lady Kelly*, 30 Ct. Int'l Trade at 190, 427 F. Supp. 2d at 1175. Nonetheless, ignorance of a statutory deadline based on lack of notice or inadequate notice may provide a proper basis for equitable tolling. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984) (citing *Gates v. Georgia-Pacific Corp.*, 492 F.2d 292 (9th Cir. 1974)); *Leorna v. United States Department of State*, 105 F.3d 548, 551 (9th Cir. 1997); *Anderson*, 30 Ct. Int'l Trade at 1744 n.6, 462 F. Supp. 2d at 1335 n.6; *Truong*, 30 Ct. Int'l Trade at 1516, 461 F. Supp. 2d at 1353.

Here, the Act expressly requires notice to a worker who applies for unemployment insurance of the benefits available under the Act, including the procedures and deadlines (19 U.S.C. §2311(f)), as well as written notice through the mail (19 U.S.C. §2275(b)(1)). The Department of Labor's administrative regulations mirror these requirements. See 20 C.F.R. §§617.4(a), (d), (e), 617.10(d). As to the 8/16 week deadline, the Department of Labor's training materials underscore the necessity of notice:

> "In many cases, the 8/16 week deadline for a worker will be reached while the worker is still receiving unemployment insurance (UI). Some workers are not aware that this deadline may apply before they exhaust their UI. The SWA [State Workforce Agency] is responsible for informing workers of these requirements." Department of Labor, TEGL No. 11–02, Change 1, 69 Fed. Reg. 60,903 (Oct. 13, 2004).

This is the very situation that occurred here. The 8/16 week deadline expired while Williams was still receiving unemployment insurance benefits.

The statutory notice provisions, the federal regulations, and the

Department of Labor's related materials reflect the judgment of Congress, as well as the Department of Labor, as to what may reasonably be expected of adversely affected workers, *i.e.*, in the absence of notice, workers cannot be expected to learn about their eligibility for benefits under the Act. The protection afforded workers through the notice requirements would be rendered a nullity if we were to hold that failure to provide notice was an insufficient basis on which to toll the 8/16 week deadline. See *Truong*, 30 Ct. Int'l Trade at 1516-17, 461 F. Supp. 2d at 1354.

No dispute exists that the Department failed to provide Williams with the required notice. Though the Board indicated in its order that the Department did not act negligently, application of the doctrine of equitable tolling does not require that the Department be at fault. See *Miller*, 77 F.3d at 191; *Tregenza*, 12 F.3d at 721. Equitable tolling, however, does require due diligence on the part of the claimant. *Irwin*, 498 U.S. at 96. Due diligence is a "fact-specific inquiry, guided by reference to the hypothetical reasonable person," or, in this case, a reasonably prudent claimant similarly situated. *Siemens*, 24 Ct. Int'l Trade at 1208, 120 F. Supp. 2d at 1114.

As reflected in its order, the Board argues that Williams did not exercise due diligence when she failed to inquire about TRA benefits following her October 10, 2006, conversation with a coworker. The Board notes that Williams waited almost two months, until her unemployment insurance benefits were exhausted, before making inquiry. The Board essentially argues that, to the extent equitable tolling is applicable, the 8/16 week deadline would only be tolled for some reasonable period after the October 2006 conversation, and that December 2006 was simply too late.

Underlying the Board's argument is its unexpressed conclusion that Williams' conversation with her coworker was an adequate substitute for statutory notice, or that Williams at least had enough information at that time to cause her to make further inquiry. The record, however, does not support such a conclusion. Williams' conversation with her coworker was not an adequate substitute for the statutorily required notice because the conversation took place after both the 8/16 deadline and the 45-day extension period had expired, and months after she should have received notice from the Department. See 19 U.S.C. §2311(f)(1) (requiring notice to "each

worker who applies for unemployment insurance").

As to the substance of the conversation, the record does not support any inference that Williams had enough information to cause her to make further inquiry. Williams testified that she had never heard of the program, and that she did not do anything at that time because she thought her coworker's benefits were essentially "the same thing" as her unemployment insurance benefits, which Williams was still receiving. We note that the Department's hearing referee, whose decision the Board affirmed, made a factual finding that Williams did not file for benefits sooner than December 2006 "because she was unaware of possible eligibility prior to that time." Williams had no reason to know of the 8/16 deadline, much less that it had passed. Her inquiry in December 2006 satisfies the due diligence requirement for application of equitable tolling.

Based on our review of the entire record, we are left with the definite and firm conviction that a mistake has been committed; the Board erred in failing to toll the 8/16 week deadline and denying Williams TRA benefits.

### CONCLUSION

For the reasons discussed, the appellate court judgment in favor of Williams is affirmed. In light of our disposition, we need not address whether the 8/16 week deadline is subject to equitable estoppel, or whether the federal regulation which formed the basis of the appellate court's decision is still valid.

Affirmed.