In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 13-3301

DIAMONIQUE MOORE, AS ADMINISTRATOR OF THE ESTATE OF
MELVIN JONES, *et al.*,

*Plaintiffs-Appellants*,

*v.*

JON BURGE, *et al.*,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 C 4143 — **John W. Darrah**, *Judge*.

_____

ARGUED SEPTEMBER 10, 2014 — DECIDED NOVEMBER 13, 2014

_____

Before WOOD, *Chief Judge*, and EASTERBROOK and TINDER,
*Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Multiple persons interrogat-
ed by the infamous Jon Burge and other officers he trained
or influenced seek damages in this suit under 42 U.S.C.
§1983. Between 1972 and 1991, while employed by Chicago's
police force, Burge regularly tortured people to extract
statements. After the statute of limitations for prosecuting

Burge about that misconduct expired, he was convicted of lying about his practices. *United States v. Burge*, 711 F.3d 803 (7th Cir. 2013). Our plaintiffs—Melvin Jones (who died early this year; his estate has been substituted), Alnoraindus Burton, Aubree Dungey, James Freeman, and Sherrod Tillis—all contend that Burge or his henchmen physically abused them during interrogations.

This suit began in June 2011 with Jones as the sole plaintiff. The other four plaintiffs were added in 2012. By then Burge had long since moved from the police force to the defendant's dock. The last interrogation about which any of the five plaintiffs complains occurred in 2004, and the statute of limitations for §1983 actions in Illinois is only two years. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The last adverse event that might have been influenced by the interrogations was Freeman's conviction in February 2009, more than two years before Jones sued (and more than three years before Freeman joined the suit). Burton, Dungey, Freeman, and Tillis are in prison following convictions for serious crimes; each conviction is supported by evidence independent of confessions induced by misconduct during interrogation. Jones, who was arrested and interrogated in 1982, was convicted the next year of murder, but that conviction was reversed because some of the evidence was inadmissible. *People v. Jones*, 157 Ill. App. 3d 1006 (1987). Jones was retried in 1989 and acquitted. Yet he did not file this suit until 22 years later. The district court dismissed all five plaintiffs' claims as barred by the statute of limitations. 2013 U.S. Dist. LEXIS 133065 (N.D. Ill. Sept. 17, 2013).

The judge also held that four plaintiffs' claims (all but Jones's) are blocked by *Heck v. Humphrey*, 512 U.S. 477 (1994),

because they remain in prison. The judge did not recognize that, if *Heck* governs, then these plaintiffs' claims are too early, not too late—for *Heck* holds that a claim that implies the invalidity of a criminal conviction does not accrue, and the statute of limitations does not begin to run, until the conviction is set aside by the judiciary or the defendant receives a pardon. But we think the district judge wrong about *Heck*, because he did not take account of the rule that claims based on out-of-court events, such as gathering of evidence, accrue as soon as the constitutional violation occurs. That's because misconduct by the police does not (at least, need not) imply the invalidity of any particular conviction. See not only *Wallace* but also, e.g., *Rollins v. Willett*, No. 14-2115 (7th Cir. Oct. 21, 2014); *Booker v. Ward*, 94 F.3d 1052 (7th Cir. 1996). These decisions deal with the Fourth Amendment's rule against unreasonable searches and seizures; their holdings are equally applicable to contentions that police tortured suspects during interrogation, because that misconduct is actionable whether or not a suspect confesses, and whether or not any statement is used in evidence at trial.

To the extent that Burton, Dungey, Freeman, and Tillis may be arguing that police violated their rights by giving false testimony, or that during trial prosecutors withheld material exculpatory evidence about misconduct during their interrogations, *Heck* indeed bars relief until a conviction is set aside. The district court must modify its judgment so that any claims based on proceedings in court are dismissed without prejudice under *Heck*. Absolute immunity for prosecutors and witnesses, see *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), would make it hard for these plaintiffs to recover damages based on the conduct of the trials even if their convictions should be

vacated some day. That may be why all five plaintiffs stress the injuries they say they suffered at the hands of the police before judicial proceedings began. Those claims are unaffected by *Heck* and are outside the scope of anyone's absolute immunity.

Plaintiffs excuse their delay by relying on what they call a "continuing violation doctrine." Some decisions, issued before *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), and *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), concluded that when a given person commits multiple transgressions against the same victim, the period of limitations runs from the final wrongdoing. But *Morgan* rejected that understanding for the category of wrongs that it called "discrete acts," such as a failure to hire or promote someone. Each discrete act—something wrongful independent of other events—carries its own period of limitations, the Court held, 536 U.S. at 110–15, contrasting discrete acts with other deeds, such as on-the-job harassment, that are wrongful only cumulatively. *Id.* at 115–21. In cumulative-violation situations, the Court held, the time runs from the last act. See also *Bass v. Joliet Public School District No. 86*, 746 F.3d 835, 839–40 (7th Cir. 2014); *Turley v. Rednour*, 729 F.3d 645, 654–55 (7th Cir. 2013) (concurring opinion).

Plaintiffs allege discrete acts, not conduct that became wrongful only when repeated. Each episode of torture is a completed wrong, so each carries its own period of limitations. See also *United States v. Kubrick*, 444 U.S. 111 (1979), which states the normal federal rule that a claim accrues as soon as a person knows both the fact and the cause of an injury. Federal rather than state law governs the accrual date of a claim under §1983. See *Wallace*, 549 U.S. at 388. Anyway,

even before *Morgan* plaintiffs could not have invoked a "continuing violation doctrine," because Burge and the other defendants did not torture any of the five plaintiffs repeatedly, over spans of years. What plaintiffs want to do is tack different victims' periods of limitations together, so that if, say, police tortured Freeman in 2004 (as he alleges), then Burton, who was tortured in 1989 and whose time to sue had expired in 1991, would have his claim revived and be allowed another two years in which to sue. Plaintiffs do not cite any decision holding that fresh misconduct with respect to one person allows a different person extra time to sue. Each injury starts a victim-specific period of limitations. (In calling plaintiffs victims, and saying that they were tortured, we accept the complaint's allegations, which have not been put to the test and may or may not be true.)

Alleging a common motive or conspiracy does not avoid *Morgan*. The Supreme Court demonstrated this in *Lewis v. Chicago*, 560 U.S. 205 (2010). A city administered an employment test that produced a list with disparate impact on minority applicants, then hired from the list in multiple waves over several years. This court concluded that a single period of limitations applies to everyone hired, or not hired, from the list, but the Supreme Court concluded that each applicant has a separate claim that accrues when he, in particular, was not hired. The existence of one practice affecting multiple applicants did not imply a single accrual date, the Court held, when each non-hire is a discrete act. That approach is equally applicable here. (The fact that all defendants are state actors is another reason why a claim of conspiracy is unhelpful. See *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009).)

Plaintiffs have a fallback position. They maintain that equitable tolling excuses the belated litigation. Illinois law supplies the statute of limitations, and state tolling rules govern when state law supplies the period of limitations. *Shropshear v. Corporation Counsel of Chicago*, 275 F.3d 593, 595–96 (7th Cir. 2001). Under Illinois law a person who invokes a tolling doctrine must show that he pursued his rights diligently. See *Clay v. Kuhl*, 189 Ill. 2d 603, 614 (2000); *Williams v. Board of Review*, 241 Ill. 2d 352, 372 (2011).

Plaintiffs have not been diligent in pursuit of their rights. Jones took almost 30 years to sue, Burton took 23, Dungey 13, Tillis 10, and Freeman 8. All five plaintiffs knew from the day they were subjected to torture that they had been injured, and by whom. Failure to appreciate that an act is wrongful does not defer the claim's accrual (that's the holding of *Kubrick*); anyway, none of the plaintiffs could have been in doubt on that score. No one thinks that torture during interrogation is lawful.

Instead of contending that the traditional criteria for equitable tolling apply, plaintiffs maintain that delay should be excused because they are confident that, had they sued earlier, they would have lost. They assert that Burge and other officers would have committed perjury at trial and that jurors would have believed the defendants. Until Burge's criminal conviction (June 28, 2010) litigation would have been pointless, plaintiffs maintain. That is questionable. Reports of Burge's misconduct were circulating publicly by 1990. One opinion called this "common knowledge" by the mid-1990s. *United States ex rel. Maxwell v. Gilmore*, 37 F. Supp. 2d 1078, 1094 (N.D. Ill. 1999). Burge was suspended in 1991 after his supervisors concluded that he had tortured sus-

pects. His name first appeared in this circuit's opinions in 1993, the year the Police Department fired him, when we reported that a jury had found that he violated suspects' rights. *Wilson v. Chicago*, 6 F.3d 1233 (7th Cir. 1993). In 2006 a Special State's Attorney released a report stating that Burge and his colleagues had engaged in systematic torture of suspects. See *People v. Wrice*, 2012 IL 111860 ¶¶41–43 (S. Ct. Ill.) (recounting the report's conclusions). And plaintiffs acknowledge that before Burge's conviction at least 10 of his victims succeeded in obtaining damages, in amounts as high as $14.8 million.

Victims of injury are not entitled to decide for themselves that suit would be futile and to grant themselves extra years, if not decades, in which to pursue litigation. They must file suit and try. If the worst occurs—if the defendants commit perjury and pull the wool over the eyes of judges and jurors alike—then plaintiffs will lose. But the worst may not come to pass. As the preceding paragraph shows, judges and jurors have been onto Burge for some time. Suppose, however, that a dissembling defendant persuades jurors to find in his favor. If later developments show that the court has been deceived, a district judge has discretion to reopen the proceedings under Fed. R. Civ. P. 60(b)(3) if fraud on the court is uncovered within a year, or 60(b)(6) if information discovered later makes it inequitable to allow the judgment to stand. Indeed, Rule 60(d)(3) provides that every district court is entitled, independent of Rule 60(b), to "set aside a judgment for fraud on the court" no matter when the fraud comes to light. Although simple perjury does not allow relief under Rule 60(d)(3), see *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011), a cooperative endeavor by multiple police officers and

their lawyers to suppress the truth might do so; that we need not decide.

Instead of trying, plaintiffs waited on the sidelines hoping that the acts of others would tarnish Burge's reputation and make a suit easier to win. That is not the sort of diligence required to establish equitable tolling.

AFFIRMED