2025 IL App (1st) 242373-U

No. 1-24-2373

Order filed December 17, 2025

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| DANIEL MORECI, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 21 CH 463 |
| | ) | |
| RETIREMENT BOARD OF THE COUNTY | ) | |
| EMPLOYEES' AND OFFICERS' ANNUITY AND | ) | |
| BENEFIT FUND OF COOK COUNTY, | ) | Honorable |
| | ) | Michael T. Mullen, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Rochford and Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*: Equitable tolling did not apply to toll the statutory deadline for a retiring government employee to purchase additional service credit because the employee failed to exercise diligence in completing the fund transfer request form and the COVID-19 pandemic did not prevent the timely processing of the employee's fund transfer request.

¶ 2    Defendant Retirement Board (the Board) of the County Employees' and Officers' Annuity and Benefit Fund of Cook County (the Fund) denied plaintiff Daniel Moreci's request to purchase

additional service credit because the Fund did not receive Moreci's required payment by the statutory deadline. The circuit court of Cook County affirmed the Board's decision.

¶ 3    On appeal, Moreci argues that the Board's denial was clearly erroneous and the court should apply equitable tolling to toll the deadline based on the substantial business disruptions caused by the COVID-19 pandemic.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court, which affirmed the Board's decision.[1]

¶ 5                                    I. BACKGROUND

¶ 6    Moreci had worked as a deputy sheriff for the Cook County Sheriff's Department since 1991 and retired effective April 30, 2020. Based on his 29.33 years of creditable service, he was entitled to a monthly annuity of $4,693.64. However, he had accumulated 1400 hours of sick time, which he could purchase and apply toward his total years of creditable service. This purchase would increase his monthly annuity to $7,805.40. The Fund advised Moreci on April 30, 2020, that, pursuant to statute, if he wanted to purchase additional service credit consisting of his accrued unused sick time, the Fund must receive the requisite payment no later than 30 days from the date of his withdrawal from service. Specifically, the Fund notified Moreci that he would need to pay the Fund $7,576.14 to purchase the additional service credit and the Fund must receive that payment no later than May 30, 2020.

¶ 7    Moreci chose to pay for his unused sick time by using his deferred compensation account held at Nationwide Retirement Solutions (Nationwide). The Fund gave Moreci the Fund's direct

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

transfer for purchase of permissive service credits form to send to Nationwide to transfer the funds to purchase permissive service credits. In bold print, the form stated: "This request should be submitted to your Deferred Compensation Plan Administrator prior to the 15th of the month for payments due on the first of the following month." The Fund had completed Section 2 of the form, which stated, *inter alia*:

"Please consider this as confirmation of the balance of $7,576.14 if paid by May 30, 2020. ***.

***. This amount will be credited to the account of the above named member for the payment of Permissive Service Credits."

The Fund had signed Section 2 of the form and dated it April 30, 2020. Thereafter, Moreci completed Section 1 of the form by entering his address, social security number, and telephone numbers. However, he left blank the entry on the form that stated: "In accordance with the provisions of the Economic Growth and Tax Relief Reconciliation Act of 2001, I elect to transfer $_____ from my 457 Deferred Compensation plan to: [the Fund.]" Moreci signed and dated the form May 4, 2020.

¶ 8      On or about May 4, 2020, Moreci went to a post office in Evergreen Park, Illinois and mailed the form by regular mail via the United States Postal Service (USPS) to Nationwide at its Chicago address provided on the form. According to the information stamped on the envelope, the form went to a postal service facility in Carol Stream, Illinois on May 9, 2020. Then, the form went to Nationwide's office in Columbus, Ohio on May 19, 2020.

¶ 9     On June 3, 2020, Nationwide issued a check for $7,576.14 to the Fund. The Fund received this check on June 8, 2020. In response to Moreci's inquiry, Nationwide sent him a letter dated August 6, 2020, stating that Nationwide had received the form on May 22, 2020.

¶ 10    On December 28, 2020, the Fund determined that Moreci was not eligible to purchase the permissive service credits. Moreci timely filed in the circuit court a complaint for administrative review.

¶ 11    In December 2022, the circuit court remanded the case to the Board to hear evidence and argument pertaining to whether Moreci established that he exercised due diligence in timely remitting payment to the Board and/or that extraordinary circumstances existed preventing the transfer of funds as required by statute. The Board conducted a hearing on October 5, 2023.

¶ 12    Moreci testified that under normal circumstances he would have personally delivered the form to Nationwide's Chicago address, but that office was closed due to the COVID-19 pandemic. Moreci did not know that Nationwide was not accepting or processing mail at its Chicago address. Moreci acknowledged that he did not use any certified or priority mail options or a courier company like UPS or FedEx to send the form to Nationwide. Also, Moreci did not contact Nationwide to check on the status or processing of his request. Furthermore, he did not contact the Fund to verify whether it had received a check from Nationwide as payment for his service credit. Moreci testified that the first time he learned that the form was rerouted to Nationwide's Ohio address was when Nationwide contacted him for the first time on June 2, 2020.

¶ 13    Brent Lewandowski, the executive director of the Fund, had served as the director of member services in May 2020. Lewandowski testified that when the Fund received Moreci's late payment on June 8, 2020, Lewandowski was directed to contact Nationwide to inquire as to why

there was a delay in processing Moreci's transfer request. Accordingly, Lewandowski contacted Neil Cook, the Nationwide representative for the Fund. Lewandowski testified that Cook informed him that Cook "was told" that Nationwide had reached out to Moreci on May 22, 2020, because his form was incomplete and confusing, but Moreci did not return Nationwide's call until June 2, 2020. After Moreci communicated with Nationwide, it issued the $7,576.14 check to the Fund on June 3, 2020. Further, Cook told Lewandowski that the only information in Moreci's file at Nationwide was the form. Cook was not provided with any call log and had no information pertaining to the person who tried to contact Moreci on May 22, 2020. Cook did not have any personal knowledge about any telephone call placed to Moreci on May 22, 2020, whether an e-mail had been sent to Moreci, or the phone number Nationwide had used to contact Moreci. Lewandowski testified that throughout the COVID-19 pandemic, including the period between April 2020 and July 2020, he was aware of other members using their deferred compensation accounts at Nationwide to purchase service credits and no member, other than Moreci, was unable to have their deferred compensation transfer forms processed by Nationwide in a timely manner to meet the 30-day requirement dictated by statute.

¶ 14     On November 2, 2023, the Board issued a decision, stating that the Illinois Pension Code did not authorize the Board to apply equitable considerations in applying plain statutory language. Nevertheless, the Board followed the circuit court's direction on remand to consider equitable tolling and concluded that Moreci failed to establish that he exercised due diligence in timely remitting payment to the Board or that extraordinary circumstances existed preventing the transfer of funds as required by statute. The Board found that the evidence established that the reason for the delay in processing Moreci's fund transfer request was not due to circumstances arising from

COVID-19 precautions but, rather, arose from Moreci's failure to complete the required paperwork necessary to transfer money from his deferred compensation account in a timely manner. Further, the Board found that the evidence established that Moreci took no action to follow up or inquire about the status of his request to Nationwide after he put his request in the USPS regular mail. Moreover, despite Nationwide's outreach to Moreci on May 22, 2020, well within the 30-day window, Moreci did not return Nationwide's call until June 2, 2020, after the 30-day window had closed.

¶ 15     After briefing and oral argument, the circuit court affirmed the Board's decision on October 31, 2024. Moreci timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17     Section 9-219(2)(f) of the Illinois Pension Code (Code) (40 ILCS 5/9-219(2)(f) (West 2018)), provides the mechanism by which a Cook County employee may apply for and receive service credit for annuity purposes for accumulated sick leave as of the date of the employee's withdrawal from service, stating in relevant part that an eligible employee

> "may receive service credit for annuity purposes for accumulated sick leave as of the date of the employee's withdrawal from service, not to exceed a total of 180 days, provided that the amount of such accumulated sick leave is certified by the County Comptroller to the Board and the employee pays an amount equal to 8.5% *** of the amount that would have been paid had such accumulated sick leave been paid at the employee's final rate of salary. *Such payment shall be made within 30 days after the date of withdrawal and prior to receipt of the first annuity check.*" (Emphasis added.) *Id*.

Here, it is undisputed that, absent the application of the doctrine of equitable tolling, Moreci's payment to the Fund was due May 30, 2020, but was received by the Fund on June 8, 2020.

¶ 18 The initial question we address is purely legal: whether the 30-day deadline of section 9-219(2)(f) of the Code *can be* subject to equitable tolling. See *Williams v. Board of Review*, 241 Ill. 2d 352, 359 (2011). Rulings on questions of law are reviewed *de novo*. *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995).

¶ 19 The equitable tolling doctrine may be applied to suspend the running of a statute of limitations period or other statutory and administrative deadlines in certain limited circumstances. *Williams*, 241 Ill. 2d at 362-63. Although equitable tolling is recognized in Illinois, it has been said to be "rarely applied." *American Family Mutual Insurance Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 32. Further, because equitable tolling is fact-based, it "must be applied with caution" (*Ciers v. O.L. Schmidt Barge Lines, Inc.*, 285 Ill. App. 3d 1046, 1052 (1996)), and our caselaw seems to suggest that it may have been actually applied only once by our supreme court. See *City of Rockford v. Giles*, 2022 IL App (2d) 210521, ¶ 65; *Williams*, 241 Ill. 2d at 361, 370 (statutory deadline in the Federal Trade Act of 1974 (Federal Trade Act) (19 U.S.C. § 2101 *et seq.* (2006)) equitably tolled given the language of the statute, its subject and purpose, and the practical implications of applying equitable tolling).

¶ 20 Equitable tolling under Illinois's doctrine may be appropriate under three circumstances: (1) where the defendant has actively misled the plaintiff, (2) if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or (3) if the plaintiff mistakenly asserted his or her rights in the wrong forum. *Clay v. Kuhl*, 189 Ill. 2d 603, 614 (2000). Extraordinary barriers that may warrant equitable tolling include legal disability, an irremediable lack of

information, or circumstances where the plaintiff could not learn the identity of the proper defendants through the exercise of due diligence. *Doe v. Hastert*, 2019 IL App (2d) 180250, ¶ 48; see *Ralda-Sandem v. Sanden*, 2013 IL App (1st) 121117, ¶¶ 18-26 (finding extraordinary circumstances where, under the Illinois Parentage Act (750 ILCS 45/1 *et seq*. (West 2020)), the uncontroverted affidavit of the plaintiff in a paternity proceeding established that the defendant had threatened the plaintiff's mother to withhold identity of parentage, which resulted in the plaintiff failing to learn of the defendant's existence until well past the two-year statute of limitations period). Additionally, when assessing whether equitable tolling should be applied, courts also consider whether the applicable statutory deadline is procedural or substantive in nature based on the statute's purpose, legislative intent, and remedial enforcement mechanisms. See *Ciers*, 285 Ill. App. 3d at 1052.

¶ 21    In *Williams*, 241 Ill. 2d at 354, the supreme court addressed whether equitable tolling could be applied where the plaintiff, a terminated worker, missed a federal statutory deadline to enroll in an approved training program and, as a result, the Board of Review of the Illinois Department of Employment Security denied her request for supplemental benefits. In its analysis, *Williams* noted that Congress is presumed to draft nonjurisdictional federal statute of limitations periods in light of a rebuttable presumption in favor of equitable tolling, and that equitable tolling had been applied to toll various time limits contained in the statute at issue, *i.e.*, the Federal Trade Act. *Id*. at 361-62. *Williams* considered whether there was a good reason to believe that Congress did not want the equitable tolling doctrine to apply, noting there was no guidance from the agency charged with administering the Federal Trade Act on the applicability of equitable tolling. *Id*. at 365. Accordingly, *Williams* considered the language establishing the statutory deadline, the underlying

subject matter and purpose of the statute, and the practical effect of applying the doctrine. *Id*. In concluding that the presumption in favor of equitable tolling applied to the Federal Trade Act's enrollment deadline, *Williams* noted that the statutory deadline was relatively straightforward and was not set forth in repetitive or unusually emphatic language. *Id*. at 366, 370. Moreover, tolling the deadline would not create the potential for administrative problems or affect the substance of a worker's supplemental benefits but, rather, would (consistent with the remedial purpose of the Federal Trade Act) simply remove a procedural obstacle to obtaining a worker's benefits. *Id*. at 367, 369-70.

¶ 22    Moreci argues that the 30-day deadline at issue here is not written in a repetitive or unusually emphatic manner and is not as technical as the time requirement at issue in *Williams*. Moreover, the Fund received the check remitted by Nationwide only about one week late, and Moreci had not received his first annuity check yet. Furthermore, the Fund's acceptance of Moreci's payment about one week after it was due would not place an additional administrative burden on the Fund because this matter was an isolated incident resulting from the disruption of regular business practices caused by the COVID-19 pandemic and Nationwide's failure to transmit funds upon receipt of the transfer form.

¶ 23    The Board argues that the plain, clear, and concise language of section 9-219(2)(f) does not allow for any exception to the 30-day deadline and this court cannot rewrite a statute under the guise of statutory construction or depart from the plain language of a statute by reading into it exceptions, limitations, or conditions not expressed by the legislature. See *In re Michelle J.*, 209 Ill. 2d 428, 437 (2004). The Board argues that it is improper to apply equitable tolling in this case because the Board has only the authority conferred upon it by the Code (see *Alvarado v. Industrial*

*Commission*, 216 Ill. 2d 547, 553 (2005)), and a decision in favor of Moreci would undoubtedly be an unauthorized act beyond the scope of the agency's jurisdiction (see *Julie Q. v. Department of Children & Family Services*, 2013 IL 113783, ¶ 24). The Board also argues that, unlike in *Williams*, here, the option to purchase service credit for unused sick time is not designed to make whole a worker who has suffered a loss. Instead, like other creditable service activities, such as military service, unused sick time is available to purchase for those who did not take advantage of the paid time when it was available during the normal course of employment. See 40 ILCS 5/15-113 (West 2018). The Board argues that the Code is not rooted in an equitable purpose; rather, it defines the mandatory calculations and permissive credits available to employed and retiring government employees. The Board argues that the underlying purpose of the 30-day deadline is most likely to limit the time for employees to purchase additional service credit to relieve the Fund of any administrative burdens that arise from dealing with untimely requests and to establish stability and finality in administrative pension matters.

¶ 24    We conclude that the doctrine of equitable tolling *can be* applied to toll the 30-day time limit in section 9-219(2)(f) of the Code. Neither the parties nor this court is aware of any provision in the Code or bulletin from the Public Pension Division of the Illinois Department of Insurance that addresses the applicability of equitable tolling. Tolling this deadline would remove a procedural obstacle for Moreci to purchase service credit for unused sick time, but would also affect the substance of his benefit by significantly increasing the amount of the pension the Fund would pay him on a monthly basis. Nevertheless, the 30-day deadline of section 9-219(2)(f) of the Code is neither complex nor set forth in repetitive or unusually emphatic language. *Cf. United States v. Brockamp*, 519 U.S. 347, 350-51 (1997) (equitable tolling did not apply to time limits in

section 6511 of the Internal Revenue Code of 1986 (Revenue Code) for filing tax refund claims where the time limits were highly detailed, technical, reiterated several times in different ways, and contained explicit exceptions to its basic time limits that did not include equitable tolling). Also, tolling section 9-219(2)(f)'s deadline does not seem likely to create the potential for severe administrative problems. *Cf. Brockamp*, 519 U.S. at 352-53 (equitable tolling did not apply because it would toll not only section 6511's procedural limitations, but would also affect the Revenue Code's substantive limitations on the amount of recovery and "could create serious administrative problems by forcing the [Internal Revenue Service] to respond to, and perhaps litigate, large numbers of late claims"). Considering the language establishing the 30-day deadline, the underlying subject matter and purpose of the statute, and the practical effect of applying the doctrine of equitable tolling, we do not conclude that the 30-day deadline of section 9-219(2)(f) of the Code must be followed in all cases and can never be relaxed, no matter the equities.

¶ 25     Next, we address whether Moreci established facts sufficient to warrant the application of equitable tolling to section 9-219(2)(f)'s 30-day deadline. "[W]e apply the clearly erroneous standard for mixed questions of law and fact to the issue of whether the deadline *should be* tolled." (Emphasis in original.) *Williams*, 241 Ill. 2d at 370. "Under this standard, we will reverse the Board's decision only if, after review of the entire record, we are left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Id*. Equitable tolling requires due diligence on the part of the claimant. *Id*. "Due diligence is a fact-specific inquiry, guided by reference to the hypothetical reasonable person, or, in this case, a reasonably prudent claimant similarly situated." (Internal quotation marks omitted.) *Id*. at 372.

¶ 26    Moreci argues that he acted with due diligence by promptly following the Fund's procedures, and the request for transfer of funds form was out of his hands on May 9, 2020, when the mailed form was routed to Carol Stream. He argues that the COVID-19 pandemic was an extraordinary circumstance that disrupted not only global business operations but everyday life. Moreci contends that, but for the COVID-19 pandemic, he would have personally appeared at Nationwide's Chicago office on May 5, 2020, to personally request that Nationwide immediately transfer the funds to the Fund. He adds that Nationwide's failure to follow the clear instructions of the transfer form and process it after receiving it on May 22, 2020, could be considered an extraordinary barrier because he had no control over Nationwide once it received his request and he had no means of knowing that a representative from Nationwide would not be available at the Chicago office to receive mail. Moreci also argues that the record is devoid of competent evidence to establish that Nationwide contacted him on May 22, 2020, and the Board relied on double hearsay when it found that he failed to respond to Nationwide's attempt to contact him until June 2, 2020.

¶ 27    Hearsay aside, the evidence establishes that Moreci did not act with due diligence and the COVID-19 pandemic did not prevent the timely processing of his fund transfer request. Moreci failed to accurately complete the form he sent to Nationwide because he failed to specify the amount of money he elected to transfer from his deferred compensation account to the Fund before he signed and mailed the form to Nationwide. When Nationwide received the form on May 22, 2020, enough time remained to remit the check to the Fund by the 30-day deadline, but Moreci's omission on the form caused confusion and required clarification before Nationwide could remit the check. Furthermore, the COVID-19 pandemic was not an extraordinary circumstance that

prevented Moreci from timely arranging for the transfer of funds because other members had used their deferred compensation accounts at Nationwide during the relevant time period to purchase service credits and no member, other than Moreci, was unable to have their deferred compensation transfer forms processed by Nationwide in a timely manner to meet the 30-day requirement dictated by statute.

¶ 28    It was Moreci's burden to establish that the Illinois doctrine of equitable tolling applied to his claim based on his exercise of due diligence and the fact that an extraordinary circumstance prevented him from timely purchasing his service credits. He did not meet that burden. Accordingly, we find no error in the circuit court's affirmance of the Board's decision that Moreci was not entitled to purchase service credits.

¶ 29                              III. CONCLUSION

¶ 30    For the foregoing reasons, we affirm the judgment of the circuit court that affirmed the Board's decision that Moreci was not entitled to purchase additional service credits.

¶ 31    Affirmed.